James Edward GLATZ,
Plaintiff/Petitioner,

v.

Dr. Haydee KORT and Robert W.
Kuhn, Defendants/Respondents.

Hugh J. CORNELL, Plaintiff/Petitioner,

v.

Dr. Raymond LEIDIG and Dr. Haydee
Kort, Defendants/Respondents.

Civ. A. Nos. 78–M–1012, 78–M–1143.

United States District Court,
Colorado.

May 3, 1984.

Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo., for plaintiffs/petitioners.

Margery T. Bornstein, Asst. Atty. Gen., Human Resources Section, Denver, Colo., for defendants/respondents.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This is a class action. The petitioner class consists of all individuals who have been or who are, prior to resolution of this case, found not guilty by reason of insanity and committed to the custody of the Colorado Director of Institutions pursuant to C.R.S. § 16–8–105(4). Petitioners seek writs of habeas corpus pursuant to 28 U.S.C. § 2254 and § 2241, releasing all members of the petitioner class being held in custody by the Colorado Department of Institutions. The action raises facial challenges to the constitutionality of the Colorado criminal commitment statutes, C.R.S. § 16–8–101, *et seq.*

Petitioners urge that the Colorado criminal justice system for commitment and release of persons found not guilty by reason of insanity, C.R.S. § 16–8–101, *et seq.*, violates the due process and equal protection clauses of the fourteenth amendment. Specifically, they urge that C.R.S. § 16–8–105(4) violates the due process clause because it permits automatic commitment for criminal defendants found not guilty by reason of insanity without a pre-commitment hearing. Second, they assert that C.R.S. § 16–8–115(2) violates the due process clause because it places the burden of proof on the insanity acquittee to establish

by a preponderance of the evidence that he is eligible for release. Third, petitioners claim that the applicable test for release from commitment, C.R.S. § 16–8–120(1), is unconstitutionally vague, ambiguous and overbroad. Finally, petitioners contend that the different commitment procedures and release standards for insanity acquittees and involuntary civil committees, C.R.S. § 27–10–101, *et seq.*, violate the equal protection clause.

On September 28, 1978 and October 31, 1978, respectively, the two class representatives, James Edward Glatz and Hugh Jan Cornell, filed separate *pro se* actions in this court, pursuant to 42 U.S.C. § 1983, in which each alleged that his commitment and continued confinement violated his constitutional rights under the due process and equal protection clauses of the fourteenth amendment. The *pro se* complaints were considered as petitions seeking habeas corpus relief because the claims primarily concerned the fact and duration of continued confinement at the Colorado State Hospital, rather than the conditions of confinement.

Because of the common issues of law, the two actions were consolidated as habeas corpus petitions on October 18, 1979. Respondents' supplemental response, filed February 23, 1981, was considered as a motion to dismiss for lack of jurisdiction due to petitioners' failure to exhaust state remedies as required by 28 U.S.C. § 2254(b). At a hearing on March 11, 1981, this court ruled that it had jurisdiction to hear the petitioners' procedural due process claims concerning allocation of the burden of proof at a release hearing and the statutory test for release because these constitutional issues were within the exception to the exhaustion requirement that permits federal habeas corpus review when the issues have been decided recently by the state's highest court. *Adkins v. Bordenkircher,* 674 F.2d 279 (4th Cir.), *cert. denied,* 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982); *Robinson v. Berman,* 594 F.2d 1 (1st Cir.1979). The Colorado Supreme Court decisions that decided these issues are *People v. Logan,* 196 Colo. 573, 588 P.2d 870 (1979), *People v. Howell,* 196 Colo. 408, 586 P.2d 27 (1978), and *People v. Giles,* 192 Colo. 240, 557 P.2d 408 (1976). After the decision of the Colorado Supreme Court in *People v. Chavez,* 629 P.2d 1040 (Colo.1981), petitioners' equal protection claims concerning the issues of Colorado's automatic commitment and its release procedures were included for review under the same exception to the exhaustion of state remedies requirement of 28 U.S.C. § 2254(b).

There are no material issues of fact. In 1971, petitioner Cornell entered his plea of not guilty by reason of insanity to arson charges. After his insanity trial, he was automatically committed to the Colorado State Hospital, pursuant to C.R.S. § 16–8–105(4). After a release hearing, petitioner Cornell was conditionally released from the state hospital on April 8, 1982, subject to specific terms and conditions for an indeterminate time. In particular, he is required to have weekly contact with a mental health center, designated by the Superintendent of the Colorado State Hospital, and to inform the State Hospital of any change of address. In addition, he may not possess either firearms or pyrotechnics, and he may not leave the state without permission of the court.

In 1977, petitioner Glatz was found not guilty by reason of insanity on charges of assault and robbery. He was committed to the Colorado State Hospital. On September 30, 1981, and on October 19, 1981, he was conditionally released from the Colorado State Hospital on the 1977 commitment and a second commitment not reflected in the record. Each release order contained identical terms and conditions effective for two years from the date of the conditional release order. In particular, petitioner Glatz was required to live in Pueblo or some other place approved by the Superintendent of the State Hospital, report to the State Hospital on a daily basis for one year, abstain from the use of any alcoholic beverage, regularly attend Alcoholics Anonymous and submit to whatever medical and psychiatric treatment the Superin-

tendent deemed advisable, expedient or necessary. He was to be administered the drug Antabuse by the State Hospital staff for one year from the date of the court order. Given the listed terms and conditions of each petitioner's conditional release order and the fact that violation of the terms and conditions could result in recommitment, C.R.S. § 16–8–115(3)(c) and § 16–8–115.5, each remained in the custody of the state of Colorado while subject to his release order for the purposes of 28 U.S.C. § 2241. *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

On October 27, 1981, petitioners moved to certify a class and to continue the action as a class action to avoid the possibility that the petitioners' claims might become moot before the case could be decided. *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). On April 21, 1982, the consolidated action was certified as a class action and ordered to be maintained as a Rule 23(b)(2) Fed.R.Civ.P. class action, for declaratory or injunctive relief with respect to the class as a whole.

At the time that each class representative entered his plea of not guilty by reason of insanity, the Colorado definition was: "A person who is so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act, or being able so to distinguish, has suffered such an impairment of mind by disease or defect as to destroy the willpower and render him incapable of choosing the right and refraining from doing the wrong . . .; and this is so howsoever such insanity may be manifested, by irresistible impulse or otherwise." C.R.S. § 16–8–101.[1]

Colorado's statutory procedure upon a plea of not guilty by reason of insanity

requires a preliminary hearing to determine probable cause for the offense, verbal entry of the plea before the court, trial on the issue of insanity. If, at that trial, the prosecution fails to prove sanity at the time of the offense beyond a reasonable doubt, the defendant is found insane with automatic commitment to the custody of the Colorado Department of Institutions for care and psychiatric treatment.

All criminal defendants must be competent to stand trial. A defendant is "incompetent to proceed" if he is suffering from a mental disease or defect which renders him incapable of understanding the nature and course of the proceedings against him or of participating or assisting in his defense or cooperating with his defense counsel. C.R.S. § 16–8–102(3). Except for trial of the issue of sanity, no person can be tried, sentenced, or executed if he is incompetent to proceed at that stage of the proceedings. The question of the defendant's competency may be raised by the court, prosecution or defense. C.R.S. § 16–8–110.

Before accepting a plea of not guilty by reason of insanity, the court must advise the defendant of the effect and consequences of the plea. The defense of insanity may only be raised by a specific plea entered at the time of the arraignment in the form "Not guilty by reason of insanity." It must be pleaded orally either by the defendant or by his counsel. If there has been no grand jury indictment or preliminary hearing prior to the entry of the plea, the court must hold a preliminary hearing prior to the trial of the insanity issue to determine probable cause for the criminal offense. C.R.S. § 16–8–103.

The issue of sanity is tried separately before trial of the issues raised in the crim-

---

**1.** In 1983, the Colorado legislature revised C.R.S. § 16–8–101. For crimes committed on or after July 1, 1983, the applicable definition of insanity in Colorado is:

C.R.S. § 16–8–101(1) . . . A person who is so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act. But care should be taken not to confuse such mental disease or defect

with moral obliquity, mental depravity, or passion growing out of anger, revenge, hatred, or other motives, and kindred evil conditions, for when the act is induced by any of these causes the person is accountable to the law.

(2) The term "diseased or defective in mind", as used in subsection (1) of this section, does not refer to an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

inal charge. C.R.S. § 16–8–104. If the trier-of-fact finds the defendant not guilty by reason of insanity, the court must commit the defendant to the custody of the Department of Institutions until such time as he is found eligible for release. Once committed Colorado is responsible for care and psychiatric treatment. C.R.S. § 16–8–105(4). It is one of the declared goals of the Department of Institutions to restore the physically or mentally disabled. C.R.S. § 27–1–101. To this end the Department of Institutions manages, supervises, and controls the Colorado State Hospital at Pueblo. C.R.S. § 27–1–104. The Colorado State Hospital has been established for the treatment and cure of such persons as may become mentally ill from any cause. C.R.S. § 27–13–101.

■ The term frequently used to designate a person found not guilty by reason of insanity, "insanity acquittee," and the plea itself, "not guilty by reason of insanity," are misleading descriptions of the factual presumptions and legal effects of the plea made by a competent defendant in a criminal case. A person who is not suffering from a mental disease or defect which renders him incapable of understanding the nature and course of the proceedings against him or of participating or assisting in his defense or cooperating with his defense counsel, may, after being advised of the effect and consequences of the plea, admit that he committed criminal acts but avoid penal consequences by introducing sufficient evidence to raise a reasonable doubt as to whether when such acts were committed, he was so diseased or defective in mind that he was incapable of distinguishing right from wrong with respect to the criminal act or being able so to distinguish, has suffered such an impairment of mind by disease or defect as to destroy the willpower and render him incapable of choosing the right and refraining from doing wrong. Such a person can, therefore, be said to be guilty of a criminal act but not subject to the penal sanction because of his mental condition at the time of the offense. Rather than being not guilty by reason of insanity, he can be said to be guilty but not punishable.

■ While the defendant may be free from such disease or defect at the time of the verdict, he will be committed to the custody of the Department of Institutions until it is shown to a court that he has no abnormal mental condition which would be likely to cause him to be dangerous to himself or to others or to the community in the reasonably foreseeable future. C.R.S. § 16–8–120(1). He is, therefore, not an "insanity acquittee" but a "criminally insane committee." Such a showing to the court may be made:

(1) at any time by a report to the court from the chief officer of the institution in which commitment has been made that the criminal committee is eligible for release. If that report is not contested by the prosecuting attorney within thirty days, the court must order discharge. C.R.S. § 16–8–116. If a contest is made by the prosecuting attorney, the court may conduct a release hearing, at which the prosecuting attorney has the burden of proof by a preponderance of the evidence that the defendant is not eligible for release. C.R.S. § 16–8–115(2).

(2) where no such determination has been made by the chief officer of the institution, the criminally committed person may, after 180 days, initiate a hearing at which he may seek to submit evidence. Except for the first hearing permitted after 180 days, a criminally committed person is not entitled to a subsequent hearing within one year, unless the court orders such hearing for good cause shown. At a hearing initiated by the committed person, he bears the burden of proof by a preponderance of the evidence that he is eligible for release. On demand he may have a jury of not less than six people. C.R.S. § 16–8–115.

For any contested release hearing the court must order a release examination of the committed person if a current examination does not exist or if either the prosecution or defense moves for an examination at a different institution or by different

experts. The court, on its own motion, may order any additional or supplemental examination, investigation, or study that it deems necessary to the resolution of the question of eligibility for release. When none of the submitted documents indicates that the committed person is eligible for release, a release hearing may be denied by the court, if the person is unable to offer proof of any other evidence that would indicate his eligibility for release. C.R.S. § 16-8-115(2).

This court is aware that Colorado's release procedures were revised by the Colorado legislature in 1983 [2] and that the revised procedures are applicable for offenses committed on or after July 1, 1983.[3] The constitutionality of the revised release procedure has not been presented to this court and will not be considered. Accordingly, the class now before this court in this action must be redefined to exclude any persons confined at the State Hospital who have been committed for offenses that occurred on or after July 1, 1983.

Petitioners assert that automatic commitment after a verdict of not guilty by reason of insanity deprives the person committed of his personal liberty without due process of law. With the voluntary entry of the plea, a defendant has admitted the commission of a criminal act but seeks to avoid criminal liability. In Colorado, the insanity plea is in the nature of confession and avoidance. *People v. Chavez*, 629 P.2d 1040, 1047 (Colo.1981); *Labor v. Gibson*, 195 Colo. 416, 578 P.2d 1059 (1978); *Leick v. People*, 136 Colo. 535, 322 P.2d 674, *cert. denied*, 357 U.S. 922, 78 S.Ct. 1363, 2 L.Ed.2d 1366 (1958).

In *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), the Supreme Court upheld the constitutionality of the commitment of a criminal defendant whose insanity is affirmatively established by a preponderance of the evidence under the District of Columbia Code. The Court held that such a verdict of not guilty by reason of insanity is sufficiently probative of mental illness and dangerousness to justify commitment for treatment and protection of society, emphasizing that proof of the criminal act indicates dangerousness. Additionally, the Court emphasized that indeterminate commitment for treatment of the individual's mental illness and for his and society's protection has no necessary correlation with the period of punishment provided for the criminal offense.

■ The differences between the District of Columbia Code and the Colorado statute are not constitutionally significant. The District of Columbia permits automatic commitment for fifty days without a right to a hearing; Colorado permits automatic commitment for 180 days. Colorado's determination that it requires an evaluation period of 180 days is reasonable. It is possible that a criminal committee may be released within the 180 day period if release is recommended by the chief officer of the treating state institution. The 180 day period, therefore, is not a mandatory commitment period. It only designates that time interval that the state hospital staff may use to observe, evaluate and treat the criminal committee before being required to prepare a release examination report for a release hearing.

The District of Columbia also requires a criminal committee to prove insanity by a preponderance of the evidence to escape the penal sanction; in Colorado there is no punishment for the criminal act upon an insanity plea unless the state proves sanity beyond a reasonable doubt. *People v. District Court*, 165 Colo. 253, 439 P.2d 741 (1968). While it may seem anomalous to confine a person to a mental hospital when there is only a reasonable doubt about his sanity, the justification for that confinement is strengthened by the fact that the defendant has admitted committing a criminal act through his voluntary plea of not guilty by reason of insanity. *See Lynch v. Overholser*, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962).

**2.** 1983 Colo.Sess.Laws ch. 188, §§ 8 & 9, ch. 189, §§ 2, 3 & 5.

**3.** 1983 Colo.Sess.Laws ch. 188, § 12, ch. 189 § 6.

In limited circumstances, Colorado permits a court to enter a plea of not guilty by reason of insanity on behalf of the defendant over the defendant's objection and to proceed with a trial of the issue of sanity. *Labor v. Gibson*, 195 Colo. 416, 578 P.2d 1059 (1978). If defendant's counsel believes that such a plea should be entered on behalf of the defendant, but the defendant refuses to permit the entry of the plea, counsel may inform the court. After its own investigation, the court must conduct a hearing to determine whether the plea should be entered. If the court finds that the entry of the plea is necessary for a just determination of the charge, it may enter the insanity plea. C.R.S. § 16–8–103(2). Such a proceeding may be an exception to the requirement that a person müst be competent to stand trial.

■ Because there are no facts before this court that permit review of those sections which may permit automatic commitment of a criminal defendant after the entry of an involuntary plea, the designation of the petitioner class is qualified to include only persons found not guilty by reason of insanity after entry by the defendant of a voluntary plea of not guilty by reason of insanity.

■ Colorado's release procedure placing the burden of proof on the party contesting the release decision of the chief officer of the treating institution is reasonably designed to balance the criminal committee's liberty interest against the state's interest in protecting the public safety and performing the prescribed duty to provide care and psychiatric treatment to persons committed to the State Hospital. *Lublin v. Central Islip Psychiatric Center*, 43 N.Y.2d 341, 401 N.Y.S.2d 466, 372 N.E.2d 307 (1977). It is unquestioned that commitment for psychiatric treatment constitutes a significant deprivation of liberty. *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). In the case of the criminal committee, the person committed has been fully advised of the effect and consequences of the plea before his voluntary entry of the plea. Therefore,

the plea itself extinguishes any real or reasonable expectation of immediate release or release before recovery from the abnormal mental condition which causes the defendant to be dangerous to himself, to others or to the community. *People v. Chavez*, 629 P.2d 1040 (Colo.1981).

■ The criminal committee's liberty interest is outweighed by the state's interest in the protection of its citizens from persons who have committed a criminal act and the state's *parens patriae* interest in care for the mentally ill. Colorado reasonably balances these interests in its release procedures by giving primary weight to the professional opinion of the state institutional officers whose duty it is to evaluate and treat the criminal committee and who have had the most recent contact with him. The chief officer of the treating institution may at any time file a report with the court recommending release. Within thirty days the court must order release if the recommendation is not contested. If the release recommendation of the treating institution is contested by the prosecuting attorney, then the prosecuting attorney bears the burden of proving by a preponderance of the evidence that release should not be granted. Only when the criminal committee requests a release hearing and the chief officer of the treating institution does not recommend release does the criminal committee bear the burden of proof by a preponderance of the evidence that he is eligible for release.

■ Assignment of the burden of proof serves to allocate the risk of error in the decisional process. Colorado may place this risk on the criminal committee when the chief officer of the treating institution has not recommended release because of the importance of the state's interest in protecting the public from one who has admitted the commission of a criminal act. *State v. Alto*, 589 P.2d 402 (Alaska 1979).

■ Colorado's statutory release procedure assists the committed person in obtaining and presenting evidence before a court or jury, if requested. The court must

appoint physicians, psychologists, or attorneys at state expense upon motion of the criminal committee and a showing that he is indigent and without funds. C.R.S. § 16–8–119. The criminal committee is entitled to be present in person, examine any reports of examination or other matters to be considered by the court, introduce evidence, summon witnesses, cross-examine witnesses and make an opening statement and closing argument. C.R.S. § 16–8–117. If the criminal committee wishes to be examined by a psychiatrist, psychologist, or other expert of his own choice, the court must order that the examiner be given reasonable opportunity to conduct the examination. C.R.S. § 16–8–108. The court also may examine or cross-examine any witness and may summon and examine witnesses on its own motion. C.R.S. § 16–8–117. Such procedural protections insure that if the criminal committee must bear the burden of proof, this burden is not made unconstitutionally onerous due to the fact of his commitment.

Once committed, a criminal committee may be released only if "the defendant has no abnormal mental condition which would be likely to cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future." C.R.S. § 16–8–120(1). Petitioners assert that this test for release is unconstitutionally vague, ambiguous and overbroad.

This court must attach a strong presumption of validity to Colorado's test for release and may not invalidate it automatically as vague simply because certain terms cannot be defined concretely or because certain fact situations may hypothetically come within its language. *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). Vague, ambiguous or overbroad statutes are unconstitutional when, in attempting to regulate or proscribe conduct, the legislative language permits unrestricted discretionary enforcement of laws that infringes on individual constitutional rights, or when citizens are incapable of determining that certain conduct is proscribed. *See Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *United States v. National Dairy Products Corp., supra.* Neither situation is applicable here.

■ Colorado's test for release is applied by the trier-of-fact after presentation of evidence in the context of an adversary release hearing. The trier-of-fact frequently must apply similarly imprecise standards to facts presented in other adversary settings and must predict the likelihood of future events. In this context, Colorado's test is not unconstitutionally vague, ambiguous or overbroad. The trier-of-fact must not only determine whether the criminal committee will be dangerous to himself, others or the community, but also that his dangerousness is caused by an abnormal mental condition. This task, given the examination reports and testimony of treating psychiatrists and physicians, is similar to the burden placed on the trier-of-fact at the sanity trial. The fact that the release test requires prediction of future conduct rather than evaluation of past conduct does not violate due process. Colorado's test expressly limits consideration to the reasonably foreseeable future which, although imprecise, may be understood and applied by the trier-of-fact. *People v. Chavez,* 629 P.2d 1040 (Colo.1981).

■ Petitioners contend that the different statutory treatment of criminal committees and involuntary civil committees regarding commitment and release procedures violates the equal protection clause of the fourteenth amendment. Petitioners' equal protection argument that equates potential involuntary civil committees and criminal committees is fundamentally flawed. It is a requirement of equal protection analysis that there be disparate treatment of groups that are similarly situated. The constitutional concern of the

equal protection clause is that the different treatment of such similar groups be rationally related to a legitimate governmental interest. Criminal committees and potential involuntary civil committees are not similarly situated groups.

Although the state ultimately seeks to care for and treat psychiatrically both groups after commitment to a state facility, petitioners ignore important differences that permit different statutory treatment. A criminal offense has occurred, and the defendant has confessed that he committed the offense through his voluntary plea of not guilty by reason of insanity. A court has determined that probable cause exists to believe that the defendant committed the act, and the defendant has been found not guilty by reason of insanity at a trial of the sanity issue. These differences dramatically distinguish the involuntary civil committee and make an equal protection comparison inappropriate. They provide a rational basis for distinguishing the criminal committee which permits the state to commit the criminal defendant automatically, without the right to a pre-commitment hearing, and permits a different burden and standard of proof for release. *Jones v. United States, supra; United States v. Ecker,* 543 F.2d 178 (D.C. Cir.1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977); *State v. Alto,* 589 P.2d 402 (Alaska 1979); *Chase v. Kearns,* 278 A.2d 132 (Me. 1971).

Upon the foregoing, it is

ORDERED, that the petitions for writs of habeas corpus on behalf of the petitioner class as qualified, to wit: all individuals who have been or who are, prior to resolution of this case, found not guilty by reason of insanity after entry of a voluntary plea by the defendant for offenses committed before July 1, 1983, and who have been committed to the custody of the Colorado Director of Institutions pursuant to C.R.S. § 16–8–105(4), are denied, and the petition on behalf of the class as qualified is dismissed.