James Edward GLATZ,
Petitioner-Appellant,

v.

Dr. Haydee KORT, et al.,
Respondents-Appellees.

Hugh Jan CORNELL,
Petitioner-Appellant,

v.

Dr. Frank TRAYLOR, et al
Respondents-Appellees.

Nos. 84–1744, 84–1745.

United States Court of Appeals,
Tenth Circuit.

Dec. 15, 1986.

Vicki Mandell-King, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, was also on brief), for petitioners-appellants.

Benjamin I. Sachs, Asst. Atty. Gen., Human Resources Section (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., and Richard H. Forman, Sol. Gen. of Colorado, were also on brief), for respondents-appellees.

Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge, and O'CONNOR, Chief District Judge.*

HOLLOWAY, Chief Judge.

This is a class action raising facial challenges to the constitutionality of the Colorado criminal commitment and release procedures, Colo.Rev.Stat. §§ 16–8–101 to 16–8–122 (1978). The named petitioners are members of a class, certified by the district court pursuant to Fed.R.Civ.P. 23(b)(2), consisting of "all individuals who have been or who are, prior to resolution of this case, found not guilty by reason of insanity after entry of a voluntary plea by the defendant for offenses committed before July 1, 1983, and who have been committed to

---

* The Honorable Earl E. O'Connor, Chief Judge of the United States District Court for the District of Kansas, sitting by designation.

the custody of the Colorado Director of Institutions pursuant to § 16–8–105(4)...."[1] The petitioners seek writs of habeas corpus pursuant to 28 U.S.C. §§ 2254 and 2241 contending that the Colorado commitment and release procedures violate both the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Agreeing with the ruling of the Supreme Court of Colorado in *People v. Chavez*, 629 P.2d 1040 (Colo.1981), the district court held that the challenged Colorado commitment and release procedures are constitutional. 650 F.Supp. 191 (D.Colo. 1984). We affirm.

## I

### THE COLORADO PROCEDURES

In Colorado the defense of insanity may only be raised by a specific plea entered orally by the court, by the defendant, or by his counsel. When such a plea is accepted the court must forthwith commit the defendant for a sanity examination. § 16–8–105(1). Upon receiving the report of the sanity examination, the court must immediately set the case for trial on the issue raised by the plea of not guilty by reason of insanity. Under some conditions trial by jury of that issue may be waived. At such a trial if any evidence of insanity is introduced, the people have the burden of proving sanity beyond a reasonable doubt.[2] If he is found not guilty by reason of insanity, the defendant is automatically committed to the custody of the Colorado Department of Institutions until he is found eligible for release. § 16–8–105.

The statute provides several ways of obtaining release. The court must order a release hearing upon motion of the insanity acquittee made after 180 days following the date of the initial commitment. § 16–8–

115(1). In addition, the court has the discretion to order a release hearing at any time on its own motion, on motion of the prosecuting attorney, or on motion of the defendant. *Id.* Finally, § 16–8–116 provides for an expedited release procedure, which is applicable at any time the chief officer of the institution to which the insanity acquittee has been committed determines that the defendant meets the statutory test for release.

The release hearing is to the court or, on demand by the insanity acquittee, to a jury. If the release hearing is contested, the burden of submitting evidence and the ultimate burden of persuasion by a preponderance of the evidence is upon the party contesting the report and recommendation of the chief officer of the institution having custody of the insanity acquittee. § 16–8–115(2). The named petitioners in the case here were not recommended for release by the respective chief officers and thus bore the burden of proof at their release hearings. At the release hearing, the court must appoint physicians, psychologists, and attorneys at State expense upon motion of the insanity acquittee and a showing that he is indigent. § 16–8–119. The insanity acquittee is entitled to be present at the hearing, examine any reports, introduce evidence, summon witnesses, cross-examine witnesses, and make opening and closing remarks. § 16–8–117.[3]

## II

### THE DUE PROCESS CLAIMS

[1, 2] It is well settled that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Jones v. United States*, 463 U.S. 354, 361, 103 S.Ct. 3043, 3048, 77 L.Ed.2d 694 (1983) (quoting *Add-*

---

**1.** Colorado's release procedures were revised in 1983 and are applicable to offenses committed on or after July 1, 1983. The constitutionality of the revised procedures is not before us.

**2.** Section 16–8–105(2) provides: "Every person is presumed to be sane; but, once any evidence of insanity is introduced, the people have the

burden of proving sanity beyond a reasonable doubt."

**3.** The court may also examine or cross-examine any witness and may summon witnesses on its own motion. § 16–8–117. An insanity acquittee also has the right to be examined by his own expert. § 16–8–108.

*ington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979)); *see Vitek v. Jones,* 445 U.S. 480, 492, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980); *see also People v. Chavez,* 629 P.2d at 1045. Moreover "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Constitutionally required procedural protections are matters of federal law and are analyzed through the application of the *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) calculus.[4] To determine whether a procedure satisfies the demands of due process we balance: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest and the probable value of additional procedural safeguards; and (3) the Government's interest, including the function involved and the burdens that additional procedural requirements would place on the state. *Id.* We now address each of the petitioners' contentions in turn.

### A

### Automatic commitment and the continuing inference of mental illness

■ The petitioners assert that automatic commitment after a verdict of not guilty by reason of insanity deprives the insanity acquittee of his personal liberty without

due process of law. The trial court, relying on *Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), held that the automatic commitment procedures do not violate the Due Process Clause, noting the important governmental interests in treatment and the protection of society. The court dismissed the differences between the District of Columbia Code involved in *Jones* and the Colorado statute as constitutionally insignificant.[5]

In Colorado, when a plea of not guilty by reason of insanity is accepted, the court must "forthwith commit the defendant for a sanity examination ...," § 16–8–105(1), and the statute thus affords some initial protection to the defendant. Subsequently, a determination of not guilty by reason of insanity establishes two facts: (i) the defendant admits that he committed a criminal act, and (ii) he committed the criminal act because of mental illness and did not know the act was wrong.[6] *Chavez,* 629 P.2d at 1047 (not guilty by reason of insanity is plea in nature of confession and avoidance); *see also Jones,* 463 U.S. at 363, 103 S.Ct. at 3049. The Colorado General Assembly has determined that these findings constitute an adequate basis for confining the insanity acquittee as a dangerous and mentally ill person. *Chavez,* 629 P.2d at 1048; *see also Jones,* 463 U.S. at 364, 103 S.Ct. at 3049. Moreover, the Supreme Court of Colorado has stated that the primary purpose of automatic commitment is

---

**4.** State procedural protections do not define what process is due under the Fourteenth Amendment. *See Cleveland Bd. of Education v. Loundermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494, 503 (1985). This is not to say that state procedural protections are ignored. "Rather, once it is determined what process is due to the individual, state procedures are scrutinized to see if they comport with the federal procedural due process requirements." *Shango v. Jurich,* 681 F.2d 1091, 1098 (7th Cir.1982).

**5.** The District of Columbia permits automatic commitment for 50 days without a right to a release hearing. Moreover, there the insanity acquittee must prove his insanity by a preponderance of the evidence. *See Jones,* 463 U.S. at 356–58, 103 S.Ct. at 3045–47.

**6.** The applicable test of insanity is found in § 16–8–101, which provides:

A person who is so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act, or being able so to distinguish, has suffered such an impairment of mind by disease or defect as to destroy the willpower and render him incapable of choosing the right and refraining from doing the wrong is not accountable; and this is so howsoever such insanity may be manifested by irresistible impulse or otherwise. But care should be taken not to confuse such mental disease or defect with moral obliquity, mental depravity, or passion growing out of anger, revenge, hatred, or other motives, and kindred evil conditions, for when the act is induced by any of these causes the person is accountable to the law.

to give the State an opportunity to assess the insanity acquittee's mental status and to determine whether he will likely pose a danger to society or himself. *Chavez,* 629 P.2d at 1048.

The fact that a person admits and is found to have committed a criminal act is an indication of dangerousness. *See Jones,* 463 U.S. at 364, 103 S.Ct. at 3049. The Court concluded:

> Nor can we say that it was unreasonable for Congress to determine that the insanity acquittal supports an inference of continuing mental illness. It comports with common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment.

*Id.* at 366, 103 S.Ct. at 3050. We likewise cannot say the Colorado statute is constitutionally unreasonable in providing for automatic commitment of insanity acquittees.

The petitioners, however, argue that the inference of continuing mental illness which is the major premise to automatic commitment is weaker if not nonexistent in this case *vis a vis Jones.* Appellants' Brief 13. They argue that the insanity acquittee in *Jones* had to prove his insanity by a preponderance of the evidence, *see* 463 U.S. at 356, 103 S.Ct. at 3045, while in Colorado, "once any evidence of insanity is introduced, the people have the burden of proving sanity beyond a reasonable doubt." § 16–8–105(2).

"The precise evidentiary force of the insanity acquittal, of course, may vary from case to case, but the Due Process Clause does not require Congress to make classifications that fit every individual with the same degree of relevance. *See Marshall v. United States,* 414 U.S. 417, 428 [94 S.Ct. 700, 707, 38 L.Ed.2d 618] (1974)." *Jones,* 463 U.S. at 366, 103 S.Ct. at 3050. We are persuaded by the reasoning of the trial court here that

> [w]hile it may seem anomalous to confine a person to a mental hospital when there is only a reasonable doubt about his sanity, the justification for that confinement

is strengthened by the fact that the defendant has admitted committing a criminal act through his voluntary plea of not guilty by reason of insanity. *See Lynch v. Overholser,* 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962).

(II R. 282). We therefore conclude that a finding of not guilty by reason of insanity under the Colorado statute provides a sufficient foundation for the commitment of an insanity acquittee until satisfaction of the conditions for release provided by the State's procedures. *Accord Benham v. Ledbetter,* 785 F.2d 1480, 1489–91 (11th Cir.1986).

## B

### Length of automatic commitment period under the Colorado statute

■ The petitioners also contend that the fact that under § 16–8–115(1) the insanity acquittee has no right to a release hearing until 180 days after commitment violates the Due Process Clause.

As the trial court noted, the 180–day period is not a mandatory commitment period; "[i]t only designates that time interval that the state hospital staff may use to observe, evaluate and treat the criminal committee before being required to prepare a release examination report for a release hearing." (II R. 282). The Due Process Clause "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972). Here the purpose for which the insanity acquittee is committed is primarily observation and the opportunity to determine whether the committee would likely pose a danger to himself or others on his release. *See Chavez,* 629 P.2d at 1048. We note that in *Jones,* in upholding the validity of the congressional determination that an insanity acquittal supports an inference of continuing mental illness, the Court emphasized that the District of Columbia Code provided a hearing within 50 days of commitment so that there was an "assur-

ance that every acquittee has prompt opportunity to obtain release if he has recovered." 463 U.S. at 366, 103 S.Ct. at 3050.

Although we view this issue as a close one,[7] we conclude that Colorado's determination to provide an evaluation period of 180 days before a release hearing may be demanded as of right is not constitutionally unreasonable. The State has an obviously legitimate claim for a period of careful observation. Furthermore, the risk of erroneous deprivation of personal liberty is minimized by the alternate release procedures provided by Colorado, discussed in Part I, *supra*. *See Mathews*, 424 U.S. at 335, 338–39, 345, 96 S.Ct. at 903, 904, 907. As there noted, the court has the discretion to order a release hearing at any time on it own motion, on the motion of the prosecuting attorney, or on motion of the defendant. Moreover, expedited release procedures are available at any time the chief officer at the institution of commitment determines that the defendant meets the statutory test for release. And as the Colorado Court observed, the statutory procedure requires the court to advise the defendant, before accepting an insanity plea, of the consequences, including commitment until he is found eligible for release; thus "entry of the plea itself extinguishes any

real or reasonable expectation by the defendant of an immediate release upon an insanity adjudication." *Chavez*, 629 P.2d at 1047.

We hold that in light of the statutory procedures as a whole, the provision for a 180–day period before the defendant has a right to a release hearing is valid.

## C

### Burden of proof at release hearing

█ The petitioners contend that placing the burden of proof at the release hearing on the insanity acquittee to show that he no longer suffers from a mental illness which is likely to cause him to be dangerous to himself or to others violates due process. The petitioners correctly point out that *Jones* does not address the appropriate allocation of the burden of proof at release proceedings for insanity acquittees. *See Jones*, 463 U.S. at 363 n. 11, 103 S.Ct. at 3049 n. 11.

Colorado's release procedures do not always assign the burden of proof to the insanity acquittee;[8] instead, the burden of proof is placed on the party contesting the release decision of the chief officer of the treating institution. § 16–8–115(2).[9] Thus,

---

**7.** Here members of the class are persons found competent to enter their pleas of not guilty by reason of insanity. We note an arguable facial inconsistency of being competent to plead or stand trial yet mentally irresponsible for the offense committed. Under Colorado law, "[a] person is incompetent to proceed when he 'is suffering from a mental disease or defect which renders him incapable of understanding the nature and course of the proceedings against him or of participating or assisting in his defense or cooperating with his defense counsel.'" *Jones v. District Court In And For the Twenty-First Judicial District,* 617 P.2d 803, 806 (Colo.1980) (citing Colo.Rev.Stat. § 16–8–102(3)); *see also Wolcott v. United States,* 407 F.2d 1149, 1150 (10th Cir.) (en banc), *cert. denied,* 396 U.S. 879, 90 S.Ct. 156, 24 L.Ed.2d 137 (1969) (citing *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

In *Wolcott,* we observed that "[t]he test of mental competency to waive and plead or to stand trial is 'by no means the same test as those which determine criminal responsibility at the time of the crime.'" *Wolcott,* 407 F.2d at 1151

(quoting *Pate v. Robinson,* 383 U.S. 375, 389, 86 S.Ct. 836, 844, 15 L.Ed.2d 815 (1966) (Harlan, J. dissenting) (footnote omitted)). We stated that "an accused may be competent ... to waive and plead, yet be ultimately found mentally irresponsible for the offense committed...." *Id.; see also People v. Gillings,* 39 Colo.App. 387, 568 P.2d 92, 98 (1977) ("Although a person may be both insane and incompetent, likewise, one may be insane and yet competent to stand trial"). Thus, the law has clearly drawn a distinction between competence to plead or stand trial and insanity. The two tests are not congruous.

**8.** As such, the insanity acquittee in Colorado need not permanently carry the greater part of risk as his District of Columbia counterpart does. *See Jones* 463 U.S. at 378, 103 S.Ct. at 3057 (Brennan J., dissenting); *see also Benham,* 785 F.2d at 1489–92 (Georgia release procedures which place the burden of proof on the insanity acquittee held constitutional).

**9.** Section 16–8–115(2) provides: "If the question [of release] is contested, the burden of submitting evidence and the burden of proof by a

if the chief officer concludes that the insanity acquittee is eligible for release, the State must shoulder the burden of proof at the release hearing. *Chavez,* 629 P.2d at 1050 n. 18. The chief officer is empowered under Colorado's release procedures to make the initial finding as to eligibility for release. § 16–8–115. The release procedures assign primary weight to the professional opinion of the chief officer and his staff, whose duty it is to evaluate and treat the insanity acquittee. We cannot say it is constitutionally unreasonable to attach such significance to the eligibility for release decision made by those who have had the most recent contact with the insanity acquittee and who have observed him over a period of time. *Cf. Vitek,* 445 U.S. at 495–96, 100 S.Ct. at 1264–65. As the trial court noted:

> Colorado's release procedure placing the burden of proof on the party contesting the release decision of the chief officer of the treating institution is reasonably designed to balance the criminal committee's liberty interest against the state's interest in protecting the public safety and performing the prescribed duty to provide care and psychiatric treatment to persons committed to the State Hospital.

(II R. 283).

Aside from its symbolic relevance, *see Addington v. Texas,* 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979), the assignment of the burden of proof will affect the outcome of the release hearing only when the evidence is in equipoise. *See Williams v. Wallis,* 734 F.2d 1434, 1440 (11th Cir.1984). We think that the State's substantial interest in avoiding premature release of an individual who has admitted committing a criminal act and insanity at the time of the offense justifies the balance which Colorado has struck for several reasons. *See Williams,* 734 F.2d at 1440; *Hickey v. Morris,* 722 F.2d 543, 548 (9th Cir.1983).

First, releasing an individual whose conduct was previously dangerous to society, when it has not been established he is no longer dangerous, poses a real threat to society. *See Williams,* 734 F.2d at 1440. The *Mathews* concern with accuracy is of a special character in this context. *See Benham,* 785 F.2d at 1489. Second, the insanity acquittee before pleading not guilty by reason of insanity is fully advised of the effects and consequences of his plea. § 16–8–103(4). Thus, the plea procedure cautions the defendant about his commitment. Third, Colorado provides insanity acquittees with several rights which make bearing the burden of proof at the release hearing less onerous. These rights include the right to have experts and attorneys appointed at State expense, to examine witnesses and introduce evidence, to summon witnesses, and to give opening and closing remarks. Fourth, because the insanity acquittee originally asserted his insanity at the time of the offense by his plea,[10] it is not impermissibly burdensome to require that he show his present recovery when the chief officer disagrees. *See Hickey,* 722 F.2d at 548–49; *see also People v. Howell,* 196 Colo. 408, 586 P.2d 27 (1978).

Finally, we are not confronted with the concern in *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), of severely restricting someone's liberty be-

---

preponderance of the evidence shall be upon the party contesting the report of the chief officer of the institution having custody of the defendant."

**10.** In Colorado, defense counsel may, over the defendant's objection, inform the court that a plea of not guilty by reason of insanity should be entered. *See* § 16–8–103(2); *see also Labor v. Gibson,* 195 Colo. 416, 578 P.2d 1059, 1060 (1978). Moreover, in limited circumstances outlined in § 16–8–103(2), Colorado permits a court to enter a plea of not guilty by reason of insanity on behalf of the defendant over the

defendant's objection. *See* § 16–8–103(2) ("If the court finds that the entry of a plea of not guilty by reason of insanity is necessary for a just determination of the charge against the defendant, it shall enter the plea on behalf of the defendant...."); *see also Labor,* 578 P.2d at 1061. The constitutionality of commitment under these procedures is not now before this court in that the designation of the petitioner class includes "only persons found not guilty by reason of insanity after *entry by the defendant of a voluntary plea of not guilty by reason of insanity.*" (II R. 283) (emphasis added).

cause of "idosynchratic behavior." *Addington*, 441 U.S. at 426–27, 99 S.Ct. at 1809–10. The Court dealt with the point in *Jones:*

> In view of this concern, the Court deemed it inappropriate to ask the individual "to share equally with society the risk of error." *Addington*, 441 U.S., at 427 [99 S.Ct., at 1810]. But since automatic commitment under § 24–301(d)(1) follows only if the *acquittee himself* advances insanity as a defense and proves that his criminal act was a product of his mental illness, there is good reason for diminished concern as to the risk of error. More important, the proof that he committed a criminal act as a result of mental illness eliminates the risk that he is being committed for mere "idiosyncratic behavior," *Addington*, 441 U.S., at 427 [99 S.Ct., at 1810]. A criminal act by definition is not "within a range of conduct that is generally acceptable." *Id.,* at 426–427 [99 S.Ct., at 1809–1810].

*Jones*, 463 U.S. at 367, 103 S.Ct. at 3051 (emphasis in original and footnotes omitted).

We cannot say that the Colorado statute is constitutionally unreasonable in requiring the insanity acquittee to prove by a preponderance of the evidence that he meets the statutory definition for release when the chief officer disagrees. The acquittee's admission that he committed a criminal act and that he was insane at the time of that offense makes it proper to ask that he share with society the risk of error, and that he bear the burden of proof when he disputes the chief officer's decision.[11] *See Chavez*, 629 P.2d at 1050–51.

## D

### The test for release

■ Section 16–8–120(1) provides that an insanity acquittee may be released only if he "has no abnormal mental condition which would likely cause him to be dangerous either to himself or to others or to the community in the reasonably foreseeable future." The petitioners claim that the test is unconstitutionally vague. They cite authorities for the proposition that it is virtually impossible to predict future dangerousness. Moreover, citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), the petitioners say the release standard fails to channel the discretion of judges or juries by failing to specify the factors on which they should rely in making predictions of dangerousness. The release test is thus intrinsically arbitrary, regardless of the protections afforded under Colorado's release procedures for insanity acquittees.

Such arguments have been previously rejected. *See Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). There the petitioner argued that "it is impossible to predict future behavior and that the question is so vague as to be meaningless." *Id.* at 274, 96 S.Ct. at 2957. The plurality opinion (Stewart, Powell, and Stevens, JJ.), stated:

> It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does

---

11. Both the Ninth and Eleventh Circuits have reached the same conclusion. *See, e.g., Hickey v. Morris*, 772 F.2d 543 (9th Cir.1985); *Williams v. Wallis*, 734 F.2d 1434 (11th Cir.1984).

On this issue, the appellants rely heavily on *Benham v. Edwards*, 501 F.Supp. 1050 (N.D.Ga. 1980), which held that the state must shoulder the burden of proof at an insanity acquittee's release hearing. The Fifth Circuit affirmed. *See Benham v. Edwards*, 678 F.2d 511 (5th Cir. 1982). However, the Supreme Court vacated the former Fifth Circuit opinion and remanded for reconsideration in light of *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). *See Ledbetter v. Benham*, 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). The Fifth Circuit then remanded the case to the district court for reconsideration in light of *Jones. See Benham v. Edwards*, 719 F.2d 772 (5th Cir.1983). The district court reversed its holding, finding that *Jones* mandated reversal on each of its holdings in the first *Benham* case. *See Benham v. Ledbetter*, 609 F.Supp. 125 (N.D. Ga.1985). Specifically, the district court found that the insanity acquittee has no constitutional right "to be free of the burden of proof in release proceedings." *Id.* at 127. The Eleventh Circuit (as the succeeding court of appeals) affirmed. *See Benham v. Ledbetter*, 785 F.2d 1480 (11th Cir.1986).

not mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system.

*Id.* at 274–75, 96 S.Ct. at 2957; *see id.* at 279, 96 S.Ct. at 2959 (White, J., concurring). *Jurek* involved a jury's consideration of a defendant's dangerousness (whether it is probable the defendant would commit criminal acts of violence constituting a continuing threat to society) in deciding whether to impose the death sentence. The plurality opinion held that the question was not an invalid one in determining whether to impose the death penalty. *Id.* at 274–75, 96 S.Ct. at 2957. In *Barefoot v. Estelle,* 463 U.S. 880, 896–98, 103 S.Ct. 3383, 3396–97, 77 L.Ed.2d 1090 (1983), another death penalty case, the Court held that expert predictions of dangerousness were admissible in a capital case, even though the predictions were not based on an examination of the defendant. The Supreme Court and this court have rejected similar challenges to statutes on grounds of vagueness. *See Schall v. Martin,* 467 U.S. 253, 278–81, 104 S.Ct. 2403, 2417–19, 81 L.Ed.2d 207 (1984) (state juvenile pretrial detention based on "serious risk" of commission of crime before court appearance held valid); *United States v. Schell,* 692 F.2d 672, 675–76 (10th Cir.1982) (provision for additional punishment for "dangerous" special offender not unconstitutionally vague).

We hold that the Colorado statutes on release of insanity acquittees are not unconstitutionally vague.

## III

## THE EQUAL PROTECTION CLAIM

■ The petitioners lastly contend that the difference in the commitment and release procedures for insanity acquittees and involuntary civil committees violates the Equal Protection Clause. They argue that there is no justification for treating insanity acquittees differently than involuntary civil committees. *See Benham,* 785 F.2d at 1485 and n. 4.

The Equal Protection Clause "… does not require things which are different in fact or opinion to be treated in law as though they were the same." *Skinner v. Oklahoma,* 316 U.S. 535, 540, 62 S.Ct. 1110, 1113, 86 L.Ed.2d 1655 (1942) (quoting *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed.2d 1124 (1940)); *see also Jones,* 463 U.S. at 370, 103 S.Ct. at 3052. *Jones* held "that insanity acquittees constitute a special class that should be treated differently from other candidates for commitment." *Jones,* 463 U.S. at 370, 103 S.Ct. at 3053. Moreover, the Court stated that "if the Due Process Clause does not require that an insanity acquittee be given the particular procedural safeguards provided in a civil commitment hearing under *Addington* [441 U.S. 418, 99 S.Ct. 1804], then there necessarily is a rational basis for equal protection purposes for distinguishing between civil commitment and commitment of insanity acquittees." *Id.* at 362, 103 S.Ct. at 3048; *see Benham,* 785 F.2d at 1485; *Hickey,* 772 F.2d at 546.

Insanity acquittees and involuntary civil committees are not similarly situated groups for equal protection purposes. As noted, the insanity acquittee has confessed to committing a criminal act earlier and the grand jury or the court has found probable cause to believe that he did in fact commit the act. § 16–8–103(3). It is not unreasonable to conclude that an insanity acquittal supports an inference of continuing mental illness. *Jones,* 463 U.S. at 366, 103 S.Ct. at 3050. As the trial court concluded:

These differences dramatically distinguish the involuntary civil committee and make an equal protection comparison inappropriate. They provide a rational basis for distinguishing the criminal committee which permits the state to commit the criminal defendant automatically, without the right to a pre-commitment hearing, and permits a different burden and standard of proof for release.

(II R. 286).

## IV

## CONCLUSION

We hold that the Colorado commitment and release procedures challenged do not

violate the Due Process Clause or the Equal Protection Clause of the Fourteenth Amendment.[12]

AFFIRMED.

12. *Accord Houghton v. South,* 743 F.2d 1438 (9th Cir.1984) (per curiam).