Albert **WILLIAMS**, et al.,
**Plaintiffs-Appellants,**

v.

Kenneth **WALLIS**, Defendant-Appellee.

No. 83–7165.

United States Court of Appeals,
Eleventh Circuit.

June 22, 1984.

Rehearing and Rehearing En Banc
Denied July 27, 1984.

Ralph I. Knowles, Jr., Guy Hicks, III, Tuscualoosa, Ala., for plaintiffs-appellants.

Robert E. Sasser, J. Fairley McDonald, III, Montgomery, Ala., for Wallis.

Before HILL, VANCE and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

This case involves a constitutional challenge to Alabama's procedures for the release of patients committed to the state's mental health system after being found not guilty of a criminal offense by reason of insanity. Named plaintiffs Joseph Berry and Albert Williams filed suit on behalf of all persons who have been or will be committed to the Alabama mental health system following findings of not guilty by reason of insanity. The district court denied plaintiffs' motion for class certification and held that Alabama's release procedures are constitutional. We affirm.

## I. FACTS

Every person committed to the Alabama mental health system's residential facilities after being found not guilty of a criminal offense by reason of insanity is assigned a treatment team, consisting of a psychiatrist, a psychologist, a physician, a nurse, a social worker, and other support personnel. The treatment team classifies the acquittee as either a "special" or nonspecial case. Special cases are patients who are considered dangerous to themselves or others. One factor the team considers in classifying an insanity acquittee is the nature of the crime he committed.

The treatment team also devises an individualized treatment plan for the acquittee. The plan may include psychotherapy, behavior modification, structural environment, chemotherapy, recreation therapy, and individual, group, and family therapy. The treatment goal for acquittees is transfer to a less restrictive environment and eventual release. The treatment team reviews the acquittee's progress every 60–90 days.

The decision to release an acquittee is usually initiated by the treatment team. The psychiatrist on the team settles any disagreement among team members over the acquittee's fitness for release. After the team recommends release, an acquittee not classified as special can be released with the approval of the forensic unit director of the hospital to which he is committed. The proposed release of special patients must be reviewed by the hospital's superintendent or his designee. The reviewing authority may communicate the proposed release to the committing court, the district attorney, the acquittee's family, and others, or may order further treatment for, or evaluation of, the acquittee. The hospital superintendent then makes the final decision whether to release the special patient. Release is based on a number of criteria including mental state, dangerousness, satisfactory placement, and whether the acquittee can be trusted to take his medication.[1]

■ There is no formal or written policy allowing either class of acquittees to ask

---

1. The criteria for release are not written. There is a written policy statement that very generally discusses release procedures for special pa-tients. There is no such written statement regarding nonspecial patients.

for review of release decisions. However, acquittees may petition for a writ of habeas corpus pursuant to Ala.Code § 15–21–3. The burden is on the acquittee in the habeas proceeding to prove by a preponderance of the evidence that he is no longer mentally ill or dangerous.[2]

Plaintiff Albert Williams was committed to Bryce Hospital, an Alabama mental health system residential facility, on February 21, 1979, after being found not guilty of murder by reason of insanity. Williams was classified as a "special" patient. Since his commitment, Williams has been treated under several treatment plans. Williams has never sought a writ of habeas corpus. He remains at this date in Bryce Hospital.

Williams and Joseph Berry, an insanity acquittee who has since been released by the state, filed this lawsuit as a class action on December 28, 1981, challenging the constitutionality of Alabama's release procedures for insanity acquittees. They sought declaratory and injunctive relief, and attorney's fees and costs. This case was submitted to the district court, on the pleadings, briefs, and depositions of the parties. The district court denied class certification and individual relief in an order dated February 11, 1983. Williams then instituted this appeal, which raises three main issues: (1) whether Alabama's release procedures violate the Equal Protection Clause; (2) whether Alabama's release procedures violate the Due Process Clause; and (3) whether class certification was properly denied. We treat the issues in this order.

## II. EQUAL PROTECTION

▇▇ Williams argues that Alabama's release procedures violate equal protection because insanity acquittees are treated differently than civilly-committed patients. However, the district court found no difference in the treatment of insanity acquittees and civil committees, and the evidence supports this finding.[3]

▇▇ The district court did find that special patients like Williams are treated differently for purposes of release than nonspecial patients. As noted previously, special patients are those who are considered dangerous. Binding precedent in this circuit holds, however, that differences in release procedures based on dangerousness are constitutionally permissible. *See Powell v. Florida*, 579 F.2d 324, 333 & n. 15 (5th Cir.1978) (dangerousness of insanity acquittee "justifies treating such a person differently from ones otherwise civilly committed for purposes of deciding whether the patient should be released"). Thus, Alabama's release procedures do not violate equal protection.

## III. DUE PROCESS

▇▇ Williams argues that Alabama's release procedures violate due process. According to Williams, due process requires periodic adversary release proceedings in which the state bears the burden of proof by clear and convincing evidence.[4]

▇▇ Ordinarily, Alabama's release proceedings, although periodic, are nonadver-

---

2. The facts in the preceding paragraphs were established by the evidence in this case. The evidence in this case also establishes that Alabama attempts to meet the guidelines of *Wyatt v. Stickney*, 344 F.Supp. 373 (M.D.Ala.1972), *aff'd in part and remanded sub nom. Wyatt v. Aderholt*, 503 F.2d 1305 (5th Cir.1974), in treating and releasing insanity acquittees. In *Wyatt*, the parties stipulated to detailed standards for treating and releasing civil committees. *See* 344 F.Supp. at 376, 384–86.

3. Appellant conceded at oral argument before this court that on the record in this case he could not maintain that the release procedures as applied to civil committees and insanity acquittees are different.

4. As part of his due process challenge, Williams also argues that Alabama employs constitutionally infirm and irrelevant release criteria. Williams correctly cites *Jones v. United States*, —— U.S. ——, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), for the proposition that an acquittee cannot be confined involuntarily when he or she is no longer mentally ill or dangerous. *See* —— U.S. at ——, 103 S.Ct. at 3052, 77 L.Ed.2d at 709. However, the release criteria that Williams challenges as irrelevant, such as whether there is an appropriate place for the acquittee to go and whether the acquittee can be trusted to take his or her medication, are relevant to a determination of continued mental illness or dangerousness. For instance, if an acquittee is no longer dangerous only because he or she is on medication or in a structured environment, then clear-

sarial and therefore do not utilize burdens of proof.[5] An acquittee may obtain an adversary proceeding, however, by prosecuting a writ of habeas corpus under Ala. Code § 15-21-3. The burden of proof in the habeas proceeding is on the patient to prove that he is no longer mentally ill and dangerous by a preponderance of the evidence. *Phillips v. Giles*, 287 Ala. 469, 252 So.2d 624, 629 (1971).

*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), held that whether procedures satisfy due process depends on the balance of

> first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

Under Williams' theory, two aspects of Alabama's release scheme violate due process. First, its periodic medical reviews are not adversarial. Second, the acquittee bears the burden at the habeas proceeding of proving his fitness for release.

### A. *Periodic Nonadversarial Review by Medical Professionals*

■ Williams contends that Alabama's periodic reviews must be adversary pro-

ceedings. However, as the Ninth Circuit noted recently in rejecting an identical claim, "Due process does not always require an adversarial hearing." *Hickey v. Morris*, 722 F.2d 543, 549 (9th Cir.1983).

■ Although Williams has a liberty interest in avoiding unnecessary confinement, *Vitek v. Jones*, 445 U.S. 480, 491-92, 100 S.Ct. 1254, 1262-63, 63 L.Ed.2d 552 (1980), several reasons convince us that Alabama's nonadversary procedures do not create an undue risk of erroneous deprivation of this liberty interest. Hospitals and their medical professionals certainly have no bias against the patient or against release. Therefore, we can safely assume they are disinterested decision-makers. In fact, the mental health system's institutional goal—*i.e.*, transfer to a less restrictive environment and eventual release—favors release. Other factors also favor release, including a perennial lack of space and financial resources, which militates against any motivation to unnecessarily prolong hospitalization, and including the medical professional's pride in his own treatment. The frequency of the evaluations also reduces the risk that the patient will be confined any longer than necessary.

The probative value of the additional safeguard of adversary hearings is slight. In *Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), in the course of determining that adversary proceedings were not required to admit a child to a

ly whether he or she will take his or her medication or be in a structured environment after release can and should be considered prior to release.

The fact that Alabama's release criteria or procedures are not written down, *see supra* note 1, causes us more concern. However, we decline to address whether this gives rise to a procedural due process problem because the plaintiff did not argue this point to the district court. We note incidentally that this lawsuit itself has clarified and provided written form for the procedures employed. Moreover, release procedures are set out in *Wyatt v. Stickney*, 344 F.Supp. 373, 384-86 (M.D.Ala.1972), *aff'd in part and remanded sub nom. Wyatt v. Aderholt*, 503 F.2d 1305 (5th Cir.1974). The evidence in this case demonstrated that the

mental health system attempts to meet the *Wyatt* guidelines for insanity acquittees as well as civil committees.

Williams' complaint asserted several other due process violations including lack of treatment, lack of review, unnecessarily restrictive confinement, and continued confinement in the absence of mental illness. R.E. 55 n. 6. The district court found against Williams as a matter of fact on each of these grounds. These factual findings are supported by substantial evidence.

5. As noted, treatment teams review each acquittee's progress every 60-90 days. Deposition of Dr. Thompson at 23; Deposition of Larry Ingram, Bryce Hospital Forensic Unit Director, at 34.

state mental hospital, the Supreme Court pointed out that "the supposed protections of an adversary proceeding to determine the appropriateness of medical decisions for the commitment and treatment of mental and emotional illness may well be more illusory than real." *Id.* at 609, 99 S.Ct. at 2507. To impose an adversarial atmosphere upon the medical decisionmaking process would have a natural tendency to undermine the beneficial institutional goal of finding the least restrictive environment including eventual release. Instead of an additional safeguard, the adversarial intrusion might very probably prove counterproductive to the interests of acquittees. Moreover, " 'neither judges nor administrative hearing officers are better qualified than psychiatrists to render psychiatric judgments.'" *Parham v. J.R.,* 442 U.S. at 607, 99 S.Ct. at 2506 (quoting *In re Roger S.,* 19 Cal.3d 921, 942, 141 Cal.Rptr. 298, 311, 569 P.2d 1286, 1299 (1977) (Clark, J., dissenting)).

The state's interest in preventing the premature release of individuals who have already proven their dangerousness to society by committing a criminal act is substantial. In addition, the financial burden that adversary proceedings would impose on Alabama is not insignificant.

We also note that the medical decisionmaking process is only part, albeit an important part, of the available release procedures. If Williams is dissatisfied with the hospital decision, he can always prosecute a writ of habeas corpus, which of course is an adversary proceeding.

We conclude that nonadversary periodic review satisfies due process under the *Mathews v. Eldridge* balancing test. The nonadversary proceedings do not create an undue risk of erroneous deprivation of liberty, and substituting an adversarial element would not provide significant increased protection against such risk. We therefore reject Williams' argument that due process requires that Alabama's periodic release proceedings be adversarial.

B. *Burden of Proof in the Habeas Corpus Proceedings*

Williams argues that the state may not require the acquittee to prove his fitness for release by a preponderance of the evidence, as Alabama does at the Ala.Code § 15–21–3 habeas proceeding.

In *Benham v. Edwards,* 678 F.2d 511 (5th Cir.1982) (Unit B), *vacated,* —— U.S. ——, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983), this court held on due process grounds that the state could not place the burden of proof at a release hearing on the insanity acquittee. *Id.* at 541. *Benham* relied on *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), which held that the state bears the burden at civil commitment hearings to prove mental illness or dangerousness by clear and convincing evidence. *Benham* found no satisfactory ground to distinguish the commitment of civil committees and insanity acquittees, and therefore held that *Addington* required the state to meet the same standard of proof at the commitment hearing of insanity acquittees. The *Benham* court then held that due process required the same standard of proof at acquittee release hearings because the court could not "discern a sufficient difference between the initial [commitment] hearing and the release hearing to justify a placement of the burden of proof different from that required by *Addington.*" 678 F.2d at 541.

Subsequently, however, the Supreme Court vacated *Benham* in light of *Jones v. United States,* —— U.S. ——, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). *Jones* holds that *Addington* does not extend to the initial commitment of insanity acquittees; instead, an acquittee may be automatically committed for an indefinite period of time after he has proved at his criminal trial by a preponderance of the evidence that mental illness caused his criminal act.

*Jones* does not address the appropriate burden of proof at release proceedings for insanity acquittees. —— U.S. at —— n. 11, 103 S.Ct. at 3049 n. 11. Therefore, *Jones* does not directly invalidate the conclusion reached in *Benham* that the state must

bear the burden at acquittee release proceedings to prove continued mental illness or dangerousness by clear and convincing evidence. Nonetheless, we must reevaluate this conclusion because it flowed directly from *Benham*'s conclusion that the state bore the same burden at acquittee commitment proceedings, a conclusion that *Jones did* invalidate.

In reexamining whether a state may place the burden of proof on the acquittee at a release proceeding, we first note the context in which the issue arises in this case. Alabama's release system is not one in which the only avenue of release is an adversary proceeding at which the acquittee must prove by a preponderance of the evidence that he is no longer mentally ill or dangerous. In Alabama, the release decision is first addressed in the nonadversary proceedings described above, and the final release decision can be, and most often is, made at this level by the hospital professionals. At these nonadversary proceedings, the acquittee does not bear the burden of proof, and the mental health system's institutional goal of transfer to a less restrictive environment and eventual release has a logical tendency to favor release. The Alabama habeas corpus proceeding at which the acquittee bears the burden of proof is a secondary or backup procedure, a safeguard. It is available to rectify any error that might have occurred during the initial nonadversary review.

The fact that every release decision is first addressed in the favorable nonadversary proceeding significantly reduces the risk of an erroneous decision denying release. Alabama's release scheme in which the acquittee bears the burden of proof in the habeas corpus part of the proceedings thus entails little risk of erroneous deprivation of an acquittee's liberty, far less than, for example, a scheme in which the proceedings are totally adversarial and in which the acquittee must prove his fitness for release at every decisional level.[6]

The probative value of the additional safeguard of placing the burden of proof on the state in the Alabama habeas proceeding would not be great. It would not affect the availability of evidence at the habeas hearing. Although in most cases the state will control the relevant evidence, the habeas petitioner can subpoena these witnesses under Ala.Code § 15-21-15.

 The placement of the burden of proof will affect the outcome of the habeas proceeding only when the evidence is in equipoise. In this situation we think that the state's interest in preventing the premature release of individuals who have already proven their dangerousness to society by committing a criminal act outweighs the interest in avoiding continued confinement of an acquittee who has already had the benefit of the hospital's nonadversary proceedings. *See Hickey v. Morris*, 722 F.2d 543, 549 (9th Cir.1983). Releasing someone who has been proven dangerous, when it has not been proved that he has recovered, poses a real threat of danger to society. On the other hand, the consequences of continued confinement for the individual, although a serious deprivation of liberty, are ameliorated by some countervailing factors. He will benefit from the continued treatment he will receive, and he will be released as soon as the hospital's trained medical professionals consider that he is no longer mentally ill or dangerous, or as soon as he can prove the same in a habeas corpus proceeding.

Given these considerations, we conclude that in the context of Alabama's total release scheme, due process does not forbid placing the burden of proof on the acquittee at the habeas proceeding to prove by a preponderance of the evidence that he is no longer mentally ill or dangerous.

## IV. CLASS CERTIFICATION

The district court denied class certification on the grounds that there had been no

---

**6.** We express no opinion on whether such a completely adversarial scheme would comport with due process. We mention it only to high-

light the low risk of error in Alabama's procedures.

showing of typicality under Fed.R.Civ.P. 23(a)(3) and that no general injunctive relief was available under Fed.R.Civ.P. 23(b)(2). On appeal, Williams contends that class certification was improperly denied.

We need not reach the merits of this issue. We have rejected all of Williams' claims on the ground that Alabama's procedures meet constitutional muster. Our resolution of these issues does not depend on anything peculiar to Williams' case. Therefore, as the Fourth Circuit determined in a similar case, "it would be a pointless waste of judicial resources to remand the case for certification of a class or classes [because] [i]n essence, we have already decided that no one is entitled to relief" on the grounds claimed. *See Harris v. Ballone,* 681 F.2d 225, 230 (4th Cir.1982).

AFFIRMED.