UNITED STATES of America, Appellee,

v.

Judy Ann WALLACE a/k/a Robyn Shwanee Jackson, Robin Shawnee Jackson, Appellant.

No. 87–1284.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 26, 1987.

Decided April 25, 1988.

Mark Bennett, Des Moines, Iowa, for appellant.

---

Guy R. Cook, Des Moines, Iowa, for appellee.

Before McMILLIAN, FAGG and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Appellant Judy Ann Wallace appeals from final orders entered in the District Court[1] for the Southern District of Iowa (1) upholding the constitutionality of 18 U.S.C. § 4243(d), which imposes the burden of proof upon an insanity acquittee to establish that he or she should not be civilly committed, and (2) committing her to the custody of the attorney general for treatment. For reversal, appellant argues that (1) 18 U.S.C. § 4243(d) is unconstitutional, and (2) the district court disregarded the overwhelming and uncontradicted evidence that she was not suffering from a mental disease or defect.

On December 19, 1985, appellant was indicted after allegedly writing and sending letters through the United States mail threatening to sexually assault, mutilate, and kill Ann Lahey, an assistant county attorney for Johnson County, Iowa. At trial, in June 1986, appellant asserted the defense of insanity. Under Title 18 U.S.C. § 17, appellant had the burden of proving her defense of insanity by clear and convincing evidence. After two days of trial, a unanimous jury returned a verdict of not guilty only by reason of insanity.

In January 1987 a hearing was held in accordance with 18 U.S.C. § 4243(c). By way of a stipulation, the court received all of the trial exhibits and some post trial exhibits as evidence in the § 4243 hearing. Appellant also called a Des Moines clinical psychologist, Dr. Craig Rypma. Dr. Rypma testified that he had not personally examined appellant, but based upon a review of prior written evaluations by other doctors, it was his opinion that appellant was not suffering from a mental disease or defect. Appellant did not present evidence at the hearing to the effect that her release would not create a substantial risk of bodily injury to other persons. Indeed, a sworn statement by appellant admitted into evidence stated that she had meant everything that she had said in the letters to Ann Lahey, and that when she was released from custody she would "find Ann Lahey wherever she is and I will sexually assault her and kill her."

Title 18 U.S.C. § 4243 sets out a new procedure to be followed when a defendant is found "not guilty only by a reason of insanity." Included therein is a provision under which such a defendant, if presently suffering from a mental disease or defect such that release would create a substantial risk of bodily harm to another person or serious damage to property of another, shall be committed for treatment to the custody of the attorney general. 18 U.S.C. § 4243(e). This new procedure calls for automatic commitment of the defendant pending a hearing, which must be held within forty days, on the defendant's present mental status and dangerousness. *Id.*, § 4243(b). A psychiatric or psychological report is required prior to the hearing. *Id.*, § 4243(b). At the hearing, the burden of proof is on the committed defendant to prove that his or her release would not create a substantial risk of injury to the person or property of others due to a present mental disease or defect. 18 U.S.C. § 4243(d). If the offense for which the defendant was tried involved bodily injury or serious property damage, or substantial risk thereof, the defendant must sustain his or her burden of proof by clear and convincing evidence. *Id.* Otherwise the defendant must prove his or her eligibility for release by a preponderance of the evidence. *Id.*

In the present case, appellant asserts that placing the burden of proof upon her at the hearing violates the due process clause of the fifth amendment. Specifically, appellant claims that § 4243 is a dramatic deprivation of her individual liberty, and that under the three-factor approach of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct.

---

1. The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

893, 47 L.Ed.2d 18 (1976) (*Mathews*), such burden-shifting is an unconstitutional denial of due process. She argues that while the Supreme Court has not addressed this precise question, the Court has unanimously held that before an individual can be involuntarily civilly committed, the government must bear the burden of proof to establish the basis for commitment by clear and convincing evidence. *Addington v. Texas*, 441 U.S. 418, 433, 99 S.Ct. 1804, 1813, 60 L.Ed.2d 323 (1979) (*Addington*). She recognizes, however, that the Court has held that an *Addington* clear and convincing standard for civil commitment may constitutionally be relaxed to a preponderance of the evidence standard for the commitment of insanity acquittees. *Jones v. United States*, 463 U.S. 354, 367–68, 103 S.Ct. 3043, 3051–52, 77 L.Ed.2d 694 (1983) (*Jones*).[2]

In *Jones*, the Supreme Court reviewed a District of Columbia statute similar to § 4243 in that it required mandatory commitment of a defendant found not guilty by reason of insanity and placed the burden of proof on the defendant at the subsequent release hearing. The defendant in *Jones* was acquitted by reason of insanity of attempted shoplifting, and the Supreme Court upheld the provision which required mandatory commitment of the defendant. The Court noted that under the District of Columbia automatic commitment procedure, the burden of proof is shifted to the defendant seeking release to show that he is no longer insane or dangerous only after the insanity acquittee himself successfully raised an insanity defense and proved by the proponderance of the evidence that he was insane. *Jones*, 463 U.S. at 363 n. 11, 103 S.Ct. at 3049 n. 11. While the Court did not specifically address this provision, the Court's discussion of due process and the commitment of insanity acquittees provides support for procedural limitations on the release of committed insanity acquittees.

The leading lower federal court decision on this question is *Benham v. Ledbetter*,

785 F.2d 1480 (11th Cir.1986) (*Benham*). In that case the Eleventh Circuit initially ruled unconstitutional a similar state law imposing the burden of proof on an insanity acquittee. *Benham v. Edwards*, 678 F.2d 511 (5th Cir. Unit B 1982). The Supreme Court then granted a writ of certiorari, and vacated and remanded the case in light of its decision in *Jones*. *Ledbetter v. Benham*, 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). On remand, the Eleventh Circuit reversed itself, and held that shifting the burden of proof to the insanity acquittee did not violate due process. *Benham*, 785 F.2d at 1491–92. *See also Williams v. Wallis*, 734 F.2d 1434 (11th Cir.1984) (placing burden of proof on insanity acquittee in a habeas corpus proceeding did not violate due process) (*Williams*); *Hickey v. Morris*, 722 F.2d 543, 549 (9th Cir.1983) (requirement that insanity acquittee demonstrate fitness for release by a preponderance of the evidence not violative of due process); *Dorsey v. Solomon*, 604 F.2d 271, 274 (4th Cir.1979) (proper to place burden of proof on inmates committed in accordance with constitutionally adequate procedures) (*Dorsey*). Appellant strongly urges that all of the cases seriously misapplied the three-factor test of *Mathews*.

█ It is undisputed that involuntary commitment to a mental institution for any reason is a deprivation of liberty which requires due process protection. *Addington*, 441 U.S. at 425, 99 S.Ct. at 1808. Whether procedures satisfy due process depends on the balancing of three-factors as set forth in *Mathews*:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens

---

**2.** The Court noted in *Jones* that it was not asked to decide whether placing the burden of proof upon the insanity acquittee was constitutional.

*Jones*, 463 U.S. at 363 n. 11, 103 S.Ct. at 3049 n. 11.

that the additional or substitute procedural requirement would entail. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

■ As to the first factor, appellant claims that commitment under § 4243 "imposes a massive curtailment of individual liberty" and, thus, the privacy interest affected by a § 4243 hearing is commanding. While no doubt commitment under § 4243 restricts the individual liberty of an insanity acquittee, the government's interest in preventing the premature release of persons who have already proven their dangerousness to society by committing a criminal act outweighs the interest in avoiding continued confinement of an acquittee. *Williams,* 734 F.2d at 1440. As the court in *Williams* recognized, the "consequences of continued confinement for the individual, although a serious deprivation of liberty, are ameliorated by some contravailing factors." *Id.* In the present case § 4243, while confining appellant, provides her with the benefits of hospitalization, care, and treatment. Moreover, § 4243(f) provides for possible discharge upon certification and application to the court by the director of the facility where she is hospitalized.

Turning to the second *Mathews* factor, appellant claims that shifting the burden of proof to her violates due process because the government has greater access to expert testimony, and because psychiatric determinations are inherently questionable. These allegations overlook entirely the context in which the § 4243 hearing arises. As the Supreme Court stated in *Jones,* there are "important differences between the class of potential civil commitment candidates and the class of insanity acquittees." 463 U.S. at 367, 103 S.Ct. at 3051. Indeed, the Court recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Jones,* 463 U.S. at 367–68, 103 S.Ct. at 3051 (citing *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). Here, the § 4243 hearing follows only after the acquittee herself has advanced insanity as a defense proving that her criminal act was the product of her mental illness. Thus, "there is

good reason for diminished concern as to the risk of error." *Jones,* 463 U.S. at 367, 103 S.Ct. at 3051 (footnote omitted). More importantly, as the Supreme Court observed in *Jones,* proof that an insanity acquittee has committed a criminal act eliminates the concern expressed in *Addington,* 441 U.S. at 426–27, 99 S.Ct. at 1809–10, that the acquittee will be committed for mere "idiosyncratic behavior."

As to the final *Mathews* factor, appellant asserts that the governmental interest would not be adversely affected by requiring the government to carry the burden of proof at the § 4243 hearing. This assertion, however, overlooks the government's interest in avoiding relitigation of the defendant's criminal trial. The jury, by returning its verdict of not guilty only by reason of insanity, has presumptively found beyond a reasonable doubt that appellant committed a criminal act but was insane. Commission of the criminal act certainly indicates dangerousness. *Jones,* 463 U.S. at 364, 103 S.Ct. at 3049; *see also Lynch v. Overholser,* 369 U.S. 705, 714, 82 S.Ct. 1063, 1069, 8 L.Ed.2d 211 (1962) (the fact that the accused was found to have committed a criminal act is "strong evidence that his continued liberty could imperil 'the preservation of public peace.' "). Requiring the government to relitigate the fact that defendant committed a criminal act would be inefficient and impose an unnecessary administrative burden on the government. Appellant's analogy to civil commitment proceedings or hearings where parental rights are terminated overlooks the context in which the § 4243 hearing arises. As said before, here the fact that the defendant has committed a criminal act has already been established beyond a reasonable doubt.

In summary, placing the burden of proof on a defendant found not guilty only by reason of insanity and committed in accordance with § 4243 comports with due process and passes constitutional muster. Application of the *Mathews* factors established that the deprivation of the person's

individual liberty is ameliorated by counter-vailing factors of hospitalization and treatment associated with the deprivation. More importantly, when the defendant has the burden of proof on the issue of insanity at trial, it is clearly constitutional to require the defendant, if acquitted by reason of insanity, to prove by the same standard that he or she is no longer dangerous or insane. Additionally, requiring the government to proceed with the burden of proof in the § 4243 hearing could cause the government to relitigate much of the criminal trial. Consequently, we hold that in the context in which the § 4243 hearing arises, placement upon appellant of the burden of proof to establish her release does not violate due process.

■ Appellant additionally argues that even if § 4243 is constitutional, the district court erred in finding that appellant failed to carry her burden of proof. A review of the evidence presented by appellant at the § 4243 hearing establishes without doubt that she simply failed to prove that her mental condition had changed from that which was previously asserted and conclusively determined by the jury. Therefore, the court acted properly in concluding that appellant had failed to meet her burden as required by § 4243.

At her criminal trial, appellant presented expert testimony through a psychologist, Dr. Garfield, that she suffered from a severe mental disease or defect. The government attempted to rebut this evidence by presenting expert testimony that her condition was a chronic and severe personality disorder. In returning its verdict, the jury was clearly and convincingly persuaded that appellant did, in fact, suffer from a severe mental disease or defect. At the post-verdict § 4243 hearing, however, appellant took a contrary position. She argued that her condition was not a severe mental disease or defect but a severe and chronic personality disorder. Appellant presented essentially the same type of evidence that the government had offered at trial and which the jury had rejected. Appellant also called Dr. Rypma, who offered his opinion that appellant was not suffering from a mental disease but a severe chronic personality disorder. Dr. Rypma admitted, however, that his opinion was not based upon an actual examination of the defendant or a review of the record pertaining to this particular case. He also admitted that he was aware that at least one doctor had concluded that appellant was suffering from a psychotic condition but Dr. Rypma was not aware of the actual testimony of Dr. Garfield at defendant's trial.

Appellant relied solely upon her assertion that she did not suffer from a mental disease or defect; she presented no evidence that her release would not create a substantial risk of injury or harm to other persons. Nevertheless, a review of the psychological evaluations and trial exhibits admitted for the purpose of her § 4243 hearing establishes that her release would create a substantial risk of injury to other persons. Particularly probative in this regard are appellant's own statements contained in a letter to Judge William C. Stewart and a sworn statement to the FBI. In those exhibits, the defendant acknowledges her desire for "sexual assault on women and little girls" and her intention to carry out those desires. Even more to the point is the government's exhibit #7 wherein appellant stated that she meant everything she said in the letter to Ann Lahey, and that when she is released from custody "I will find Ann Lahey wherever she is and I will sexually assault and kill her."

Judgment affirmed.