This case concerns an appeal from the denial of a petition for writ of habeas corpus filed by Arna Bo Winchester. Winchester was committed to Taylor Hardin Secure Medical Facility in 1985, after a jury found him not guilty by reason of insanity of robbery and kidnapping. He was transferred to Searcy Hospital in early 1987. After a nonjury hearing on his petition, the trial judge entered an order denying the writ. Winchester originally appealed from that order to the Court of Criminal Appeals; however, on Bartlett's motion and pursuant to our holding in Nix v. State, 512 So.2d 121 (Ala.Civ.App. 1987), his appeal was transferred to this court. As we noted in Nix, the Court of Civil Appeals has exclusive appellate jurisdiction over appeals involving the enforcement of an order or action of an administrative agency, here, the Department of Mental Health and Mental Retardation. See, § 12-3-10, Ala. Code 1975 (1986 Repl.Vol.).
Testimony from two psychologists and a psychiatrist on Winchester's treatment team at Searcy reveals that he suffers from alcohol abuse, antisocial traits, and alcohol idiosyncratic intoxication, which is defined as a disorder that affects an individual such that when he drinks a minimum of alcohol, his personality traits change from a calm, mild-mannered disposition to one of strong aggressiveness. Winchester is also mildly mentally retarded.
The expert testimony is in accord that Winchester poses a danger to himself and others any time he consumes an alcoholic beverage, and that without the structure and supervision of the hospital, it is presently more probable than not that he will drink and become dangerous. His history indicates that he becomes violent when he drinks even a small amount of alcohol. Although Winchester has been allowed to leave the hospital on several successful day-passes, his treatment program has not yet progressed to the point of any overnight absences from Searcy.
The testimony further reflects that although Winchester realizes he has a drinking problem, he does not fully appreciate the adverse effect alcohol has on him because of his diminished mental capacity.
The release of an insanity acquittee in the Alabama mental health system is usually initiated by his treatment team. Several factors are considered, including "mental state, dangerousness, satisfactory placement, and whether the acquittee can be trusted to take his medication." Williams v.Wallis, 734 F.2d 1434, 1436 (11th Cir. 1984). If the treatment team does not initiate release, however, § 15-21-3, Ala. Code 1975 (1982 Repl.Vol.), is available, which provides for the prosecution of a writ of habeas corpus by "[a]ny person confined as insane." An insanity acquittee must prove by a preponderance of the evidence that he is no longer mentally ill or dangerous in order to prevail in the habeas proceeding.Williams v. Wallis, supra; Knight v. State, 460 So.2d 876
(Ala.Crim.App. 1984).
Whether the acquittee is mentally ill at the time he seeks release is a medical question, but whether he is dangerous is a question that involves not only medical opinion but also a legal and social judgment. Powell v. Florida, 579 F.2d 324 (5th Cir. 1978). The dangerousness of an insanity acquittee is established by his antisocial behavior in committing a crime, and as the Fifth Circuit noted in Powell, "[t]his past conduct justifies a greater role for the trial judge in determining whether an insanity acquittee remains dangerous to society in order to protect society from similar behavior in the future." 579 F.2d at 333. Discussing the appropriateness of an acquittee's release, the Eleventh Circuit has stated as follows:
 "[R]elease criteria . . . such as whether there is an appropriate place for the acquittee to go and whether the acquittee can be trusted to take his or her medication, are relevant to a determination of continued mental illness or dangerousness. For instance, if an acquittee is no longer dangerous only because he or she is on medication or in a structured *Page 1260 environment, then clearly whether he or she will take his or her medication or be in a structured environment after release can and should be considered prior to release." (Emphasis added.)
Williams v. Wallis, supra, at 1437-38, n. 4.
In addition to the expert testimony that Winchester is mentally ill and is still dangerous, the trial judge here heard the testimony of both Winchester and his mother regarding his suitability for release. As in any ore tenus situation, the trial judge's decision is presumed to be correct and will not be disturbed on appeal by this court unless it is palpably wrong. Nix v. State, 481 So.2d 403 (Ala.Civ.App. 1985). If credible evidence was presented to support the judgment of the trial court, as there was here, we cannot say that his denial of this writ was plainly and palpably erroneous. Foster v.Foster, 409 So.2d 833 (Ala.Civ.App. 1981). The testimony in this case fully supports the trial judge's decision that Winchester should not be released at this time.
Winchester relies heavily on the holding in Carlisle v.State, 512 So.2d 150 (Ala.Crim.App. 1987), that while the burden is on an insanity acquittee to prove that he is no longer dangerous before he is entitled to release, he is not required to provide guarantees. We agree that the uncertainty and fallibility of psychiatric diagnosis and treatment in general make guarantees concerning the future behavior of a mentally ill person impossible. Addington v. Texas,441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). We believe, however, that Winchester's reliance on Carlisle is misplaced. None of Carlisle's experts testified that he was still dangerous; all of Winchester's experts testified that his present potential for dangerousness is high if he is abruptly released from the structured environment of Searcy Hospital at this stage in his treatment program. The record is clear that in Winchester's case the likelihood of dangerous conduct upon release is more than a "mere expectancy that danger-productive behavior might be engaged in." Lynch v. Baxley, 386 F. Supp. 378, 391 (M.D.Ala. 1974). Because we find that Winchester did not meet his burden of proof, the following statement by the Eleventh Circuit is particularly appropriate:
 "Releasing someone who has been proven dangerous, when it has not been proved that he has recovered, poses a real threat of danger to society. On the other hand, the consequences of continued confinement for the individual, although a serious deprivation of liberty, are ameliorated by some countervailing factors. He will benefit from the continued treatment he will receive, and he will be released as soon as the hospital's trained medical professionals consider that he is no longer mentally ill or dangerous, or as soon as he can prove the same in a habeas corpus proceeding."
Williams v. Wallis, supra, at 1440.
The trial court's decision in this case is due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and HOLMES, J., concur.