William Stitt filed a petition for habeas corpus in the Circuit Court of Clarke County, requesting release from the custody of the Alabama Department of Mental Health and Mental Retardation. Following a hearing, the trial court denied the petition and found that Stitt was being lawfully held by the department pursuant to a commitment order entered by the Juvenile Court of Baldwin County in August 1987. Stitt appeals.
Stitt is a 20-year-old white male with psychiatric problems dating back to 1984. At that time, he began throwing temper tantrums. During the tantrums, he would become angry and violent and would destroy property. The record reflects that he would refuse to clean or bathe himself, burn objects in his home, go to bed fully clothed and with a butcher knife, and make bizarre gestures with his hands. He failed the sixth grade once and the eighth grade twice. He dropped out of school in 1984. He has been arrested twice, once in 1985 for forging a check and again in 1986 for looking into a girl's window.
Stitt was initially committed to the custody of the department in August 1987. Following commitment, Stitt was admitted to Bryce Hospital and was later transferred to Searcy Hospital. In October 1988, he was transferred to Thomasville Adult Adjustment Center (TAAC). He has remained in the custody of the department continuously at TAAC since that time.
Initially, Stitt asserts that he no longer falls within the standards necessary for commitment and continued confinement. He contends that he is no longer mentally ill or a threat either to himself or to others, that he has received the maximum benefit of his current institutionalization, and that his marked improvement and controlled behavior since confinement warrant discharge from his current placement.
When a committee seeks to be released from custody, his remedy is to petition for a writ of habeas corpus pursuant to § 15-21-3, Ala. Code 1975. In order to prevail in a habeas corpus proceeding, the committee must prove by a preponderance of the evidence that he is no longer mentally ill or dangerous.Williams v. Wallis, 734 F.2d 1434 (11th Cir. 1984); Carlisle *Page 261 v. State, 512 So.2d 150 (Ala.Crim.App. 1987).
Whether a committee is mentally ill at the time he seeks release is strictly a medical question. Powell v. Florida,579 F.2d 324 (5th Cir. 1978). Whether a committee is dangerous at the time he seeks release involves both legal and social judgment as well as medical opinion. Powell, supra. Whether there is an appropriate place for the committee to go and whether the committee can be trusted to take his or her medication are relevant to a determination of continued mental illness or dangerousness. Williams, supra.
At the hearing on the petition, Dr. Charles Nevel, chief of psychiatry at Tuscaloosa Veterans' Administration Hospital, testified as an expert witness on behalf of Stitt. He testified that he spent approximately one hour with Stitt on June 6, 1989, and approximately thirty minutes reviewing his chart. Based on the interview, he assessed Stitt's mental illness in the following manner: "As close as I could tell, he's always been diagnosed schizoaffective disorder, and he may or may not still have that. I really can't tell. He's been on medication and it's difficult to tell." He testified that "if he has a mental illness, it's in remission." Nevel stated that, based on his review of Stitt's records, he was not dangerous to himself or to others and had shown no signs of a dangerous behavior in the last year. He testified that Stitt had received maximum benefits from his hospitalization at TAAC and that he doubted his continued hospitalization could improve his condition. Upon inquiry by the court as to whether or not Stitt should be released without any restraints, Dr. Nevel stated that he did not think that Stitt should be released without restraints because he would have to be watched closely, as medication compliance was apparently a problem. He suggested that a better solution would be to transfer Stitt to a community placement, "assuming one could be found" — especially in view of the fact that Stitt's family could not be considered an alternative at the time of the hearing.
The department called Dr. Donato Roman, Stitt's attending psychiatrist, as an expert in the field of psychiatry. He testified that, at the time of the hearing, Stitt was suffering from schizoaffective disorder, alcohol abuse, marijuana abuse, stuttering, and borderline intellectual function.
Dr. Roman testified that, at the time of the hearing, Stitt was on no medication. He stated that he was taken off all medication as part of his treatment plan to transfer him to a substance abuse rehabilitation program. In order to meet the criteria for a substance abuse program, one must be free from psychoactive drugs and must submit to the program voluntarily. He stated that, due to Stitt's nonpsychotic state during June 1989, it was the decision of the treatment team to cease all psychotrophic medication in an effort to assess Stitt's treatment to determine if he was appropriate for such a transfer. Dr. Roman testified, however, that Stitt has in the past, and at the time of the hearing, denied that he had any drug or alcohol problems. It is important to note here that Stitt was on medication when he met with Dr. Nevel in June.
Dr. Roman testified that, since medication has been discontinued, Stitt has regressed "at a rapid pace over the last three weeks, especially last week" and that "his performance has decreased." In fact, he testified that, two days prior to the hearing, Stitt provoked a fight with another male resident, and it was documented that Stitt was the aggressor.
Dr. Roman testified that Stitt has a drug and alcohol problem. He stated that, during his last two home passes, he admitted to smoking marijuana and drinking alcohol. He further admitted that he "watered down" his urine sample in order to test negative for drug usage. Dr. Roman testified that Stitt "is a danger now and he is psychotic and he is mentally ill." When asked whether Stitt would pose a threat of substantial harm to himself or others if released from TAAC on the day of the hearing, Dr. Roman responded in the following way: "It is my expert opinion that he will be in trouble from the time he *Page 262 
leaves the door, on, and he will be a danger to himself."
Dr. Roman concluded that Stitt was in need of further treatment, and such treatment could only be provided in a structured environment, such as TAAC, and perhaps even a more restrictive environment than TAAC was needed, but that Stitt could be served in nothing less.
The State does not have an interest in confining individuals involuntarily if they are not mentally ill or if they do not pose a danger to themselves or others. Addington v. Texas,441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).
 "Hospitals and their medical professionals certainly have no bias against the patient or against release. Therefore, we can safely assume they are disinterested decision-makers. In fact, the mental health system's institutional goal — i.e., transfer to a less restrictive environment and eventual release — favors release. Other factors also favor release, including a perennial lack of space and financial resources, which militates against any motivation to unnecessarily prolong hospitalization, and including the medical professional's pride in his own treatment."
Williams, supra, at 1438.
Here, the facts indicate that Dr. Roman and the other employees of TAAC who testified at the hearing were "disinterested decision-makers" with only Stitt's best interest in mind. The testimony indicates that, at the time of the hearing, Stitt was mentally ill and posed a threat to himself as well as to others. In view of the fore-going, we cannot say that the trial court erred in denying the petition.
Stitt asks this court to determine the following issues:
 "Whether the responsibility for identifying an appropriate and existing community placement for appellant within a reasonable time after admission rested with the Department of Mental Health and Mental Retardation and whether, once appellant has been found to have received maximum benefit from his hospitalization or has been found to no longer meet the requirements for commitment, the department was legally obligated to place appellant in that placement.
 "Whether the Department of Mental Health and Mental Retardation's failure to discharge appellant in an appropriate and existing community facility in order that he may receive the treatment his treating professionals have identified as essential for a successful transition to the community is a violation of appellant's rights under the Constitution.
 "Whether the equity powers of the circuit court can be a basis for ordering the Department of Mental Health and Mental Retardation to discharge appellant to an appropriate and existing community facility."
We decline this request and find our initial determination to be dispositive of this case because we find that these three issues have not been properly preserved for our review.
Although there was scant testimony concerning the availability of an appropriate community placement for Stitt, there was no testimony or argument presented to the trial court concerning the issue of responsibilities involved in identifying the same. In view of the fact that these issues were not litigated before the trial court on the petition for habeas corpus, there is nothing for this court to review.Robinson v. State, 439 So.2d 797 (Ala.Crim.App. 1983).
Accordingly, this case is due to be affirmed.
AFFIRMED.
ROBERTSON and RUSSELL, JJ., concur. *Page 263