This case involves the denial of a petition for writ of habeas corpus.
James A. Schell was committed to Bryce Hospital (Bryce), a mental institution, in January 1991, following an order to the Alabama Department of Mental Health and Mental Retardation by the Probate Court of Jefferson County, Alabama. Schell's commitment resulted from his arrest for disorderly conduct and also resulted from his being found walking in traffic in a delusional state. Schell has remained at Bryce continuously since his civil commitment.
In August 1991, Schell petitioned for a writ of habeas corpus (sometimes referred to herein as petition) for release from his involuntary commitment. After a hearing, the petition was denied. Schell appeals.
We first note that in an ore tenus proceeding, the trial court's decision is presumed correct and should not be reversed unless there is an abuse of discretion. D.L. v. StateDepartment of Human Resources, 562 So.2d 271
(Ala.Civ.App. 1990).
Schell argues that he no longer meets the requirements for involuntary commitment enumerated in Ala. Code 1975, §22-52-37(a)(7), as follows: *Page 1150 
 "No person shall be committed unless the judge finds the following minimum standards for civil commitment have been met:
"a. That he is mentally ill;
 "b. That he poses a real and present threat of substantial harm to himself or to others;
 "c. That the danger has been evidenced by some factual basis to support the facility staffs' recommendation that recommitment, commitment or continued custody is necessary for the person's health and well-being. In order for a person to be committed or recommitted to the custody of the department of mental health and mental retardation, the evidence presented must clearly and convincingly lay a factual basis for the conclusion that continued custody is necessary;
 "d. That there is treatment available for the illness diagnosed or that confinement of the dangerous but untreatable individual is necessary for his and the community's safety and well-being; and
 "e. That commitment or recommitment is the least restrictive alternative necessary and available for treatment of the person's illness."
When a patient no longer meets these requirements of initial commitment, and he no longer presents a danger, he must be released. Birl v. Wallis, 633 F. Supp. 707 (M.D.Ala. 1986).
In order to prevail in a habeas corpus proceeding, the petitioner must establish by a preponderance of the evidence that he is no longer mentally ill or dangerous. Ala. Code 1975, § 15-21-3; Stitt v. State Department of Mental Health MentalRetardation, 562 So.2d 259 (Ala.Civ.App. 1990); Williams v.Wallis, 734 F.2d 1434 (11th Cir. 1984).
The record revealed that Schell's psychiatric history began approximately thirty years ago when he became distraught over marital difficulties. Since then, Schell had been a patient at Bryce and at various Veterans Administration hospitals a multitude of times. Prior to the present commitment to Bryce, however, Schell had been living successfully in a boarding home for approximately three years.
Dr. Charles Nevels, a psychiatrist, testified that his examination of Schell revealed: 1) bipolar disorder mixed, manic type, controlled with medication, 2) alcohol abuse, in remission, and 3) occasional psychogenic polydypsia (water intoxication), caused by drinking large amounts of water in a short period of time. Dr. Nevels determined that Schell suffered from a mental illness which was controlled by medication. Dr. Nevels additionally stated, however, that a side-effect of the medication was extreme thirst, which led to Schell's psychogenic polydypsia. According to Dr. Nevels, this condition was severe and could cause seizures or death. Based on his observations, Dr. Nevels testified that, in his opinion, Schell was no longer a danger to himself or to others, and that Schell could live independently.
Dr. Alexander Salillas, Schell's attending psychiatrist at Bryce and an expert in the field of psychiatry, agreed generally with Dr. Nevels's evaluation of Schell, but opined that Schell could be dangerous to himself or others if he were discharged into an unsupervised setting because of Schell's history of non-compliance with after-care recommendations. Dr. Salillas stated, however, that one of Schell's prescribed medications is injected and that it is administered only once a month. Dr. Salillas recommended that Schell be discharged into a supervised facility so that his medication and other needs could be monitored.
Mr. Danny Whitehead, a social worker at Bryce, testified that, in his opinion, without a structured environment, Schell would probably start drinking alcohol again and that he would stop taking his medication. He believed that Schell could function in an environment less restricted than Bryce, however.
Ms. Phyllis Maudry, the acting director of the non-institutional care and services department at Bryce, testified that, following hospitalization and treatment, Schell previously had been successfully placed in supervised facilities. She further testified *Page 1151 
that, as long as Schell's water intoxication problem did not recur, he again could be placed in a similar facility.
After hearing the evidence, the trial court denied Schell's petition, and stated in pertinent part the following:
 "The evidence is undisputed that Mr. Schell suffers a mental illness, which is currently controlled by medication. This evidence as to the dangerousness of Mr. Schell is uncontroverted. The evidence clearly supports a finding, however, that defendant is currently not dangerous to himself only because he is on his medication or in a structured environment. It is probable that the petitioner would not comply with his medication requirements for an extended period without supervision. It is probable that, without supervision and structure, petitioner will again drink; that will heighten the probability of noncompliance and increase the probability of danger. It is probable that without his medication, petitioner will pose a danger, at least to himself."
Accordingly, the trial court found that Schell failed to show by a preponderance of the evidence that he is no longer mentally ill or dangerous.
A preponderance of evidence is "[e]vidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." Black's Law Dictionary, 1064 (5th ed. 1979).
The record reveals that Schell has improved and that his behavior has stabilized, with the exception of occasional incidences of water intoxication. Apparently, the denial of Schell's petition rests primarily on the probability of Schell's failure to take his medication, should he be released. We note that in Williams, supra, the court explained that such anticipated non-compliance is a consideration in determining whether a patient can and should be released.
 "For instance, if [a patient] is no longer dangerous only because he or she is on medication or in a structured environment, then clearly whether he or she will take his or her medication or be in a structured environment after release can and should be considered prior to release."
Williams, supra at 1437-38 n. 4.
After reviewing the record, we cannot say that the trial court's decision was an abuse of its discretion. Accordingly, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.