The appellant, Jesse Cooley, Jr., appeals from an order of the Mobile Circuit Court denying his petition filed pursuant to Rule 25.8, Ala.R.Crim.P., seeking release from the custody of the Alabama Department of Mental Health and Mental Retardation.[1]
Evidence adduced at the hearing on the appellant's petition tended to show the following. In April 1981, a Mobile County grand jury indicted the appellant for the offense of murder. In October 1982, the Mobile Circuit Court adjudicated the appellant not guilty by reason of insanity. By order of the circuit court, the appellant was committed to the custody of the Department of Mental Health and Mental Retardation (hereinafter referred to as "the Department"). Shortly thereafter, the Department placed the appellant in the Taylor Hardin Secure Medical Facility for treatment of his mental illness. Sometime in 1984, the appellant was transferred to Searcy Hospital, which, like Taylor Hardin, is a Department-run facility, for continued treatment of his illness. In December 1986, the appellant "eloped" from the Searcy facility and remained at large for almost nine years, his whereabouts unknown to the Department, until, in August 1995, law enforcement authorities located him in Mobile. The appellant was arrested upon order of the circuit court and was returned to the Department's custody. The Department then placed the appellant in Taylor Hardin for continued treatment of his mental illness. In November 1995, approximately three months after his return to the Department's custody and his reentry into Taylor Hardin, the appellant filed the present Rule 25.8 petition seeking release from custody.
Testimony at the hearing established that the appellant suffers from paranoid schizophrenia, a mental illness, and that he is currently being treated for that condition at Taylor Hardin. There was evidence that in the years that followed his elopement from Searcy Hospital, the appellant maintained a somewhat transient existence, living in numerous cities throughout the country, including Atlanta, Nashville, Los Angeles, Las Vegas, and Detroit. While he was living in Los Angeles, the appellant, by his own admission, "got hooked" on crack cocaine. (R. 50.) While living in Las Vegas in 1990 and 1991, the appellant entered and completed an 18-month drug treatment program. Although he maintained at the hearing that he is no longer addicted to drugs, the appellant acknowledged that he continues to participate in a drug treatment program at Taylor Hardin. The appellant claimed that he eloped from Searcy Hospital in 1986 because "the mental health workers started bringing drugs and alcohol and marijuana and I asked the doctors to help me catch the mental health workers bringing me the drugs and stuff and they said they couldn't help me. So, I walked about from Searcy Hospital to get some help." (R. 13.)
Dr. Wilburn Rivenbark, a licensed clinical psychologist and director of the psychology and evaluation services at Taylor Hardin, testified that he had recently interviewed the appellant and that he had spoken with the appellant's current treatment team at Taylor Hardin. Dr. Rivenbark testified that the appellant currently has no "blatant obvious" (R. 34) signs of psychosis and that the appellant's mental illness appears to be stabilized by the medication prescribed for him by doctors at Taylor Hardin. He testified that the appellant's treating psychiatrist believes that the appellant is in remission because of the medication. (The appellant testified that he becomes nervous and hallucinates when he does not take his medication.) Dr. Rivenbark testified that the appellant has been fully cooperative in taking his medication while at Taylor Hardin. However, he acknowledged that the appellant has not had any opportunity to be in a less restrictive *Page 1221 
setting since his return to the Department's custody because of the highly structured environment at Taylor Hardin.
According to Dr. Rivenbark, the appellant has a tendency to interpret matters in a light favorable to himself, and there is some confusion on the appellant's part as to the reason for his continued commitment to the Department's custody. Dr. Rivenbark also testified that although the appellant has not committed an actual physical act of violence since his return to Taylor Hardin, the appellant had recently made a verbal threat against a forensic technician at Taylor Hardin. Dr. Rivenbark said that because of the appellant's past history of violence and his tendency to believe that people are persecuting him or conspiring against him, there is "always a possibility" (R. 42) that the appellant could pose a threat of danger to himself or to others. He testified that this potential for danger is greater without a well-developed post-hospitalization program.
Although Dr. Rivenbark believed that the appellant could be ready for release into a less restrictive Department facility, he acknowledged that the Department's treatment-and-evaluation period for recommending release into such settings normally takes six months and that, at the time of the hearing, the appellant had been in his current treatment program at Taylor Hardin for only four and one-half months.
A petition pursuant to Rule 25.8, Ala.R.Crim.P., filed in the circuit court that originally ordered commitment to the custody of the Department, is the appropriate method for a defendant acquitted by reason of insanity to seek release from commitment. See, e.g., Ex parte State Department of MentalHealth Mental Retardation, 619 So.2d 934 (Ala.Cr.App. 1993). "Rule 25.8 is a restatement of the provisions of The Criminal Psychopath Release Restriction Act [§§ 15-16-60 through15-16-71, Ala. Code 1975], and the procedures [for release from commitment] are specially detailed in the Act and in Rule 25.8." H. Maddox, Alabama Rules of Criminal Procedure, § 25.8, p. 661 (1990). As is the case with Rule 25.8, under the Act, the court that is authorized to grant an order releasing a defendant acquitted by reason of insanity from the Department's custody is the court that ordered the defendant's commitment. See Rule 25.1(a), Ala.R.Crim.P.; Committee Comments to Rule 25.2, Ala.R.Crim.P; § 15-16-61(1), Ala. Code 1975.
In order to gain release from the Department's custody, a defendant acquitted of a criminal charge on the ground of insanity must prove by a preponderance of the evidence that he or she is no longer mentally ill and no longer poses a danger to himself or herself or to others. Carlisle v. State,512 So.2d 150 (Ala.Cr.App. 1987); Knight v. State, 460 So.2d 876
(Ala.Cr.App. 1984). See Rule 25.8(f), Ala. R.Crim. P. ("If after conducting the hearing, the court determines that the defendant is no longer mentally ill or no longer poses a real and present threat of substantial harm to himself or to others by being at large, the court shall order the defendant's release.").
"Whether an insanity committee is mentally ill at the time he seeks release from confinement is strictly a medical judgment."Carlisle, 512 So.2d at 158, citing Powell v. Florida,579 F.2d 324, 332 (5th Cir. 1978). Whether a defendant acquitted by reason of insanity is dangerous at the time he or she seeks release from commitment involves legal and social judgments, as well as medical judgment. Powell, 579 F.2d at 332.
In Knight, supra, this court stated as follows:
 "The case of Lynch v. Baxley, 386 F. Supp. 378, 391 (M.D. Ala. 1974), Civil Action No. 74-89-N, and the unpublished order dated May 6, 1975, establishes the principles governing the retention of people in mental hospitals in Alabama.
 "As the three-judge federal panel stated in the Lynch order:
 " 'In the case of a person presently confined and receiving treatment for his mental illness, however, his need to be recommitted to the custody of the Department of Mental Health or to the Veteran's Administration may not be readily demonstrable by the same type of "recent overt act" which is constitutionally prerequisite to the commitment *Page 1222 of an individual at liberty. In such cases, the need for a recommitment must be established by evidence which provides some factual basis to support the hospital staff's recommendation that recommitment is necessary for the patient's health and well-being.' (Emphasis supplied [in Knight.])
 "It stands to reason that where someone is compelled to accept medication and is in a relatively non-stressful environment, such as is sought to be maintained at Bryce Hospital, there may not have been any recent overt act of violence. In the case of persons already confined to Bryce Hospital, this requirement was dealt with by the federal court in the foregoing paragraph of the order issued by the court dealing with persons already confined in a mental institution. There need only be 'some factual basis' to support the hospital staff's recommendation.
 "In Williams v. Wallis, 734 F.2d 1434 (11th Cir. 1984), the court stated:
 " 'As noted previously, special patients are those who are considered dangerous. Binding precedent in this circuit holds, however, that differences in release procedures based on dangerousness are constitutionally permissible. See Powell v. Florida, 579 F.2d 324, 333 n. 15 (5th Cir. 1978) (dangerousness of insanity acquittee "justifies treating a person differently from the ones otherwise civilly committed for purposes of deciding whether the patient should be released").' "
Knight, 460 So.2d at 878.
In Powell, supra, the Fifth Circuit, stated as follows in a footnote:
 "The basis for commitment of an individual acquitted by reason of insanity is his 'dangerousness' to society. In determining the existence of that dangerousness a court should focus upon the patient's behavior and must predict whether that behavior demonstrates that the patient, if released, would pose a substantial threat of harm to himself or others. While an initial commitment of an acquittee may well focus upon the crime committed, the release of an individual committed by reason of insanity more properly looks to that individual's behavior since the crime to determine whether or not his recent behavior demonstrates his continuing dangerousness."
Powell, 579 F.2d at 333, fn. 10.
In Williams v. Wallis, 734 F.2d 1434 (11th Cir. 1984), the Eleventh Circuit stated:
 "[W]hether there is an appropriate place for the acquittee to go and whether the acquittee can be trusted to take his or her medication, are relevant to a determination of continued mental illness or dangerousness. For instance, if an acquittee is no longer dangerous only because he or she is on medication or in a structured environment, then clearly whether he or she will take his or her medication or be in a structured environment after release can and should be considered prior to release."
734 F.2d at 1437-38.
Testimony at the hearing on the appellant's petition revealed that the appellant still suffers from a mental illness, although there was evidence that his condition is in remission because of the medication he is taking that was prescribed by his doctors at Taylor Hardin. There was no medical testimony presented that the appellant no longer suffers from a mental illness. Further, although the appellant has not committed an actual act of physical violence since his return to the Department's custody, testimony indicated that in the few short months since his return to Taylor Hardin he has threatened hospital personnel. The appellant, moreover, spent almost nine years following his insanity acquittal and his original commitment to the Department's custody evading the Department and the structured treatment it could have provided. Finally, the appellant has not even been in the current treatment program at Taylor Hardin long enough for Department officials to effectively evaluate his progress for purposes of making an informed recommendation regarding his release or placement in a less restrictive environment.
Clearly, the appellant failed to show by a preponderance of the evidence that he is no longer mentally ill or dangerous. The circuit court correctly denied the appellant's petition *Page 1223 
for release pursuant to Rule 25.8, Ala.R.Crim.P.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] The appellant styled his petition alternatively as a "petition for writ of habeas corpus."