Ricky WYATT, By and Through his aunt and legal guardian Mrs. W.C. RAWLINS, Jr., et al., Plaintiffs,

Diane Martin, et al., Plaintiff–Intervenors,

v.

Royce G. KING, as Commissioner of Mental Health and Mental Retardation, and the State of Alabama Mental Health Officer, et al., Defendants,

United States of America, et al., Amici Curiae.

Civ. A. No. 3195–N.

United States District Court, M.D. Alabama, N.D.

Dec. 31, 1991.

Ira Burnim, Washington, D.C., for proposed intervenor Bretz.

R. Emmett Poundstone, III, and Ricky Trawick, Alabama Dept. of Mental Health, Montgomery, Ala., Joel Kline, Christopher Cerf, Washington, D.C., for King and Dept. of Mental Health.

Andrew J. Barrick and Mitchell W. Dale, U.S. Dept. of Justice, Civil Rights Div., Washington, D.C., for U.S.

Byrd R. Latham, Patton, Latham, Legge & Cole, Athens, Ala., for Gunter, Steagall and Brassell.

David Ferleger, Philadelphia, Pa., for intervenors Martin, et al.

Reuben Cook, Edward Stevens, Victoria Farr, and Donald Tipper, Tuscaloosa, Ala., for intervenors Martin, et al.

Peter G. Thompson, Sandra Lord, Washington, D.C., for Ricky Wyatt, et al.

Pamela Chen, U.S. Dept. of Justice, Civil Rights Div., Sp. Litigation Section, Washington, D.C., for amicus curiae U.S.

Algert Agricola, Mark Montiel, and David Byrne, Montgomery, Ala., for State defendants.

R. David Christy, Montgomery, Ala., for King.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Previously in this litigation, this court held that the State of Alabama must conduct periodic judicial review of the need for continued confinement of persons involuntarily committed to the state's mental health institutions. The court also held that these recommitment hearings must comport with certain listed procedures and standards. This lawsuit is once again before the court, this time on a motion filed by the defendants—the Commissioner of Mental Health and Mental Retardation and

the directors of the various state mental health institutions—requesting that the court clarify some of these procedures and standards. For the reasons that follow, the court concludes that clarification is warranted but not completely in the form the defendants seek.

In a judgment with accompanying memorandum opinion issued on July 22, 1991, this court ordered the State of Alabama to provide individuals, involuntarily committed to the state mental health system, with periodic judicial review of the need for continued confinement. *Wyatt v. King*, 773 F.Supp. 1508, 1516–17 (M.D.Ala.1991).[1] The court further mandated that these recommitment hearings comport with the same "procedures and standards" required for initial commitments, as previously set forth and imposed on the state in 1974 by a three-judge court in *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974). *Wyatt*, 773 F.Supp. at 1510, 1516–18.[2] Finally, this court directed the defendants to formulate and submit to the court a plan for timely and complete implementation of the new requirements. *Id.* at 1517–18. By order entered on December 19, 1991, the court

1. The court placed the following time restrictions on the required recommitment reviews:

"(1) The initial period of involuntary commitment pursuant to State of Alabama's civil commitment statutes shall not exceed 150 days.

"(2) If the state desires further commitment, the director of the state mental health facility or his designee must file a petition for renewal of a commitment within 30 days prior of the expiration of the initial commitment order. The petition must explain in detail why renewal of commitment is being requested and why less restrictive conditions of treatment are not appropriate.

"(3) No renewal of commitment shall exceed a period of one year.

"(4) A patient involuntarily civilly committed shall be released if (a) the director of a state mental health facility or his designee does not file a petition for renewal of commitment within the time prescribed, or (b) a state court denies the petition for renewal, or (c) no state-court order renewing commitment is issued before expiration of the current period of authorized commitment."

*Wyatt*, 773 F.Supp. at 1512.

2. In its 1991 opinion, this court summarized these *Lynch* standards and procedures as follows:

"(a) Adequate notice of the hearing and its purpose shall be given sufficiently in advance of the scheduled proceedings to permit a reasonable opportunity to prepare therefor.

"(b) The person proposed to be committed or recommitted shall have the right to attend the hearing unless the Court, after appropriate inquiry, determines that he is so mentally or physically ill as to be incapable of attendance.

"(c) The subject of the hearing shall be informed of his right to counsel and to the appointment of counsel if indigent. Where the recommitment of a presently confined patient is sought, a guardian *ad litem* who is an attorney shall be appointed.

"(d) Any person now unlawfully confined shall be entitled to independent expert examination and assistance in preparation for the hearing, by means of court appointment where he cannot afford to retain such services.

"(e) If recommitment hearings are to be conducted on the hospital premises, they shall take place in surroundings as non-coercive as possible. In no event shall such hearings be held in patients' quarters. Appropriate street dress shall be made available to each subject, if not already available to him.

"(f) No person shall be committed or recommitted unless the probate judge finds:

(i) That he is mentally ill;

(ii) That he poses a real and present threat of substantial harm to himself or to others;

(iii) That the danger has been evidenced by a recent overt act of the individual;

(iv) That there is treatment available for the illness diagnosed or that confinement of the dangerous but untreatable individual is necessary for his and the community's safety and well-being; and

(v) That commitment or recommitment is the least restrictive alternative necessary and available for treatment of the person's illness.

"(g) The necessity for commitment or recommitment must be proved by evidence which is clear, unequivocal, and convincing.

"(h) At the hearing, the subject shall have the right to offer evidence, to be confronted with the witnesses against him and to cross-examine them, and the privilege against self-incrimination. The rules of evidence applicable in other judicial proceedings in this state shall be followed in involuntary commitment proceedings.

"(i) A full record of the proceedings, including findings adequate for review, shall be compiled and retained by the probate court.

"(j) Nothing contained in this Order shall be construed to limit the power of the guardian *ad litem* to waive any of his client's rights when, in his judgment and in the judgment of the probate judge after appropriate findings of fact, waiver is in the best interests of his client."

*Wyatt*, 773 F.Supp. at 1510.

approved an implementation plan which requires, among other things, that the new recommitment hearings begin in early January 1992.

■■■ This litigation is now before the court on a motion filed by the defendants seeking clarification with regard to the following two recommitment requirements borrowed from the 1974 *Lynch* decision and set forth in this court's 1991 decision:

"No person shall be committed or recommitted unless the probate judge finds: ... That the danger has been evidenced by a recent overt act of the individual;

\* \* \* \* \* \*

"The necessity for commitment or recommitment must be proved by evidence which is clear, unequivocal, and convincing."

*Id.* at 1510. The defendants observe that in May 1975, in response to what the *Lynch* court described as "substantial difficulties that all parties continue[d] to experience in interpreting the requirement that a person proposed to be committed or recommitted to the custody of the Department of Mental Health ... manifest some danger to himself or others by a 'recent overt act,'" *Lynch v. Baxley,* civil action no. 74–89–N (M.D.Ala. May 8, 1975), that court issued the following order "to clarify what is meant by said requirement in the commitment and recommitment contexts":

"In the case of a person at liberty in the community who is proposed to be involuntarily committed, it is imperative that the need for his confinement be demonstrated by clear and convincing evidence of the real and present danger which he poses to himself or to others. Moreover, it is essential that the evidence which forms the basis of the decision to deprive a citizen of his liberty be more concrete and more reliable than a mere expectancy or probability that the person will engage in dangerous behavior in the future. As the Court indicated in the opinion entered in this cause on December 14, 1974, 'To confine a citizen against his will because he is likely to be dangerous in the future, it must be shown that he has actually been dangerous in the recent past and that such danger was manifested by an overt act, attempt or threat to do substantial harm to himself or another.'

"In the case of a person presently confined and receiving treatment for his mental illness, however, his need to be recommitted to the custody of the Department of Mental Health ... may not be readily demonstrable by the same type of 'recent overt act' which is constitutionally prerequisite to the commitment of an individual at liberty. In such cases, the need for recommitment must be established by evidence which provides some factual basis to support the hospital staff's recommendation that recommitment is necessary for the patient's health and well-being. The fact of present confinement is not alone sufficient to justify continued confinement; neither is the testimony of staff personnel predicting adverse consequences of release from confinement if that testimony is based wholly on opinion and is unsupported by any facts or occurrences which would lead a reasonable man to concur in the recommendation for recommitment. In order for a patient to be recommitted to the custody of the Department of Mental Health ..., the evidence presented must clearly and convincingly lay a factual basis for the conclusion that continued confinement is necessary."

*Id.*

With their motion in the instant case, the defendants argue that, when this court issued its 1991 decision adopting the standards and procedures set forth in the *Lynch* court's 1974 decision, it implicitly also adopted that court's 1975 clarification. They contend that, as to recommitment proceedings, the 1975 order did two things: it "removed" the recent-overt-act requirement and it "changed" the burden of proof by replacing the "clear, unequivocal, and convincing" standard with the more relaxed "clear and convincing" standard. Finally, because the recommitment hearings are to begin in less than a month, the

defendants ask for expedited consideration of their motion.

This court agrees with the defendants in part. The court agrees that, when it adopted the *Lynch* court's 1974 standards and procedures, it adopted as well that court's 1975 clarification of those standards and procedures. First, with the 1975 order, the *Lynch* court did not change the 1974 procedures and standards, but rather, in the words of that court, sought to "clarify what is meant" by them within the contexts presented. It is only reasonable to conclude, therefore, that the 1974 *Lynch* decision carries with it the 1975 clarification. Second, with the 1991 decision, it was the intent of this court to extend to recommitment proceedings the same protections provided at initial commitment hearings. Therefore, to the extent the 1975 *Lynch* order clarified the 1974 decision, the order also clarified this court's 1991 decision. Finally, even if the 1975 *Lynch* order were not binding, this court would still follow it. This court finds the reasoning of the order to be persuasive.[3]

The court disagrees, however, with the defendants' argument that, in the context of recommitment proceedings, the 1975 clarification "removed" the recent-overt-act requirement and "changed" the burden of proof. As stated, the *Lynch* court's 1975 order was a mere clarification; the court addressed the application of the recent-overt-act requirement, not its elimination. The court attempted, in its words, *"to clarify* what is meant by said requirement in the commitment and recommitment contexts." (Emphasis added.) First, the court expanded on the definition in the initial commitment context by reemphasizing, from its initial 1974 decision, that the requirement may be met by evidence that a person "has actually been dangerous in the recent past and that such danger was manifested by *an overt act, attempt or threat to do substantial harm to himself or another."* (Emphasis added.) The court similarly clarified the requirement's definition to meet the demands of the recommitment

context by interpreting it more broadly to mean that there must be *"facts or occurrences* which would lead a reasonable man to concur" that continued confinement is necessary—that is, that "the evidence presented must clearly and convincingly lay a *factual basis* for the conclusion that continued confinement is necessary." (Emphasis added). Thus, although demanding, the requirement is still sufficiently flexible to allow for initial commitment as well as continued commitment or recommitment where the evidence establishes that the need is real and present. The 1975 order of the *Lynch* court did not eliminate the requirement that to continue the confinement of an involuntarily committed person there must be a recent overt act.

Admittedly, the issue of the burden of proof was not before the *Lynch* court when it issued the 1975 clarification. Nevertheless, this court is persuaded that the *Lynch* court intended that the two phrases— "clear, unequivocal, and convincing" and "clear and convincing"—were to be equivalent and interchangeable. First, it is apparent from the 1975 order that the *Lynch* court viewed the two phrases as such. The 1975 order was only two legal-size pages in length. Nevertheless, the court used the "clear and convincing" phrase twice and in both instances prominently—the first time in regard to initial commitment proceedings when it stated at the beginning of the order that "it is imperative that the need for his confinement be demonstrated by clear and convincing evidence," and the second time in regard to the recommitment when it stated at the end of the order that "the evidence presented must clearly and convincingly lay a factual basis for the conclusion that continued confinement is necessary." The court's repeated use of the phrase "clear and convincing" was not a mistake.

Second, this conclusion gains further support when the 1975 order is read in conjunction with the 1974 decision. In the 1974 decision, the court rejected the preponderance of the evidence standard, advo-

---

**3.** Indeed, the only reason this court did not acknowledge the 1975 order as binding in its

decision of 1991 is because the court was unaware of the order at that time.

cated by the defendants, because that standard would provide insufficient protection against an erroneous deprivation of liberty, *Lynch* 386 F.Supp. at 393 n. 12; the court also rejected the requirement of proof beyond a reasonable doubt, advocated by the plaintiffs, because it would demand a degree of proof "virtually unattainable" in commitment proceedings, given the limitations of contemporary psychiatry. *Id.* The court sought and adopted, instead, a middle ground. In fashioning a standard for this middle ground, the court relied on two opinions: *Tippett v. Maryland,* 436 F.2d 1153, 1165 (4th Cir.1971) (Soboleff, J., concurring in part and dissenting in part); and *Dixon v. Attorney General,* 325 F.Supp. 966, 974 (M.D.Pa.1971) (Biggs, J.). However, for Judge Soboleff, the applicable standard was "clear and convincing" while for Judge Biggs it was "clear, unequivocal and convincing." The fact that the *Lynch* court, without distinguishing between the two phrases, relied on both these opinions to support its middle-ground approach indicates that the court considered the phrases to be equivalent and interchangeable. It is therefore apparent that, when the court used one phrase in the 1975 order and another phrase in the 1974 decision, it intended the two phrases to be equivalent. Indeed, if the use of the word "unequivocal" were understood to require more—that is, to require "proof that admits of no doubt," *Addington v. Texas,* 441 U.S. 418, 432, 99 S.Ct. 1804, 1812, 60 L.Ed.2d 323 (1979)—it would no longer be a middle-ground standard, but rather would be equivalent to, if not more demanding than, the requirement of "proof beyond a reasonable doubt," a standard which the *Lynch* court explicitly rejected.[4]

Accordingly, for the above reasons, it is ORDERED that the defendants' motion for clarification, filed on December 20, 1991, is granted to the extent:

(1) That the May 8, 1975, clarification order in *Lynch v. Baxley,* civil action no. 74–89–N (M.D.Ala.), applies fully to this court's memorandum opinion and judgment entered on July 22, 1991; and

(2) That the phrases "clear and convincing" and "clear, unequivocal, and convincing" are equivalent and interchangeable with regard to the court's memorandum opinion and judgment entered on July 22, 1991, and that, in conducting the recommitment hearings, the defendants, if they desire, may use the former phrase so as to avoid any confusion.

DONE.

---

**4.** In *Addington,* decided five years after the original *Lynch* decision, the Supreme Court held that, to satisfy due process, states must at a minimum require the use of the "clear and convincing" evidence standard in civil commitment proceedings.