This is a recommitment case. The applicable law in such cases has recently been discussed at length by this court inThomas v. State Dep't of Mental Health Mental Retardation,620 So.2d 18 (Ala.Civ.App. 1992).
On May 8, 1992, the director of Bryce Hospital (Bryce) petitioned to renew Sandra Thompson's commitment to the custody of the Alabama Department of Mental Health and Mental Retardation (Department), alleging the need for continued inpatient treatment of Thompson's mental illness. After an ore tenus hearing, the probate court rendered an order containing the findings necessary to support an order of commitment pursuant to Ala. Code 1975, §§ 22-52-10.4 and -37(a)(7), as well as Lynch v. Baxley, 386 F. Supp. 378 (M.D.Ala. 1974), rev'd onother grounds, 651 F.2d 387 (5th Cir. 1981). Accordingly, the court granted the petition, renewing Thompson's commitment to Bryce and the custody of the Department for a period not to exceed one year. *Page 27 
Thompson now appeals, contending that the evidence adduced at the hearing provided an insufficient factual basis for her recommitment. Specifically, she maintains that the probate court erred by finding that there was clear and convincing evidence of the following: that she poses a real and present threat of substantial harm to herself or others; that she is unable to make a rational and informed decision regarding treatment for her mental illness; and that her recommitment to Bryce is the least restrictive alternative necessary for her treatment. See §§ 22-52-10.4 and -37(a)(7); Lynch, 386 F. Supp. 378.
At the outset we note that, as in any ore tenus proceeding, a presumption of correctness accompanies the probate court's findings of fact here; accordingly, the court's judgment will not be reversed on appeal unless it is shown to be plainly and palpably wrong. Knox Kershaw, Inc. v. Kershaw, 552 So.2d 126
(Ala. 1989).
The record reveals that Thompson was originally committed to Bryce and the custody of the Department in April 1990, experiencing hallucinations and delusional thinking. At the recommitment hearing Thompson's treating psychiatrist testified that Thompson suffers from a mental illness diagnosed as "paranoid schizophrenia, chronic type." The psychiatrist stated that although Thompson's hallucinations and delusions are currently controlled by antipsychotic medication, her mental condition will deteriorate without additional treatment. He indicated that when Thompson does not take the medication, her hallucinations and delusions recur and she becomes agitated and assaultive.
Other testimony reflected that Thompson does not believe that she is mentally ill and does not feel that the medication she takes is helping her. The psychiatrist testified that Thompson has shown little insight into her illness and has been uncooperative with her treatment program at Bryce. Accordingly, he believed that Thompson is unlikely to take her medication in a non-structured environment and is currently a poor candidate for release from Bryce.
The psychiatrist also testified that Thompson's schizophrenia impairs her ability to make rational judgments with regard to her various ocher health problems. According to the psychiatrist, Thompson is "obsessed" with smoking. Although she has been diagnosed with a precancerous lesion on her throat, Thompson has stated that she would rather die than give up smoking. The psychiatrist indicated that Thompson's mental illness also prevents her from gaining insight into the insulin-dependent diabetes she suffers from and has resulted in her unwillingness to comply with necessary dietary restrictions or to learn how to self-administer insulin.
The record also shows that Thompson has a history of negligent smoking and of setting fires. In this regard, the psychiatrist stated that one reason for Thompson's admission to Bryce was that she accidentally set fire to a mattress at the boarding home where she had been living. Thompson admitted at the hearing that prior to her admission, she intentionally set fire to the curtains in a hospital because she became upset when the hospital staff would not allow her to smoke. Testimony indicated that Thompson has repeatedly violated Bryce's rules and safety regulations with regard to smoking and that the hospital staff has found her in the halls and stairways of buildings with cigarettes and lighters in her possession.
It was the psychiatrist's opinion that Thompson poses a real threat of harm to herself and to others and that her continued confinement and treatment at Bryce are necessary. He based this opinion on the following facts and occurrences: Thompson does not believe that she is mentally ill and is unlikely to take her medication outside of Bryce's structured environment; when she does not take medication, Thompson suffers from hallucinations and delusions and becomes agitated and assaultive; Thompson has demonstrated little insight into her mental illness and has been uncooperative with efforts toward treatment; approximately four and one-half months before the petition for Thompson's recommitment was filed, Thompson became angry at another patient and hit *Page 28 
her with a tray; Thompson's mental illness prevents her from understanding and making rational judgments with regard to her diabetes and her health problems related to smoking; as a result of her mental illness, Thompson has demonstrated an unwillingness to comply with rules and safety regulations relating to smoking; Thompson continues to be obsessed with smoking and has a history of negligently and deliberately setting fires.
We conclude that the foregoing testimony provided clear and convincing support for the findings of the probate court — that Thompson poses a real and present threat of substantial harm to herself and to others; that she is unable to make a rational and informed decision regarding her treatment; and that recommitment to Bryce is the least restrictive alternative necessary for her continued treatment. Although Thompson's counsel has contended that she was recommitted solely because she refuses to stop smoking cigarettes, we note that the testimony of the psychiatrist in this regard was that, due to her mental illness, Thompson has no real understanding of the consequences of smoking. Furthermore, Thompson continues to violate smoking regulations and engage in practices that have in the past resulted in her setting fires inside of dwellings. We would also point out the testimony regarding Thompson's noncompliance with a program for treatment of her diabetes. In the case of dangerousness to self, both the threat of physical injury and discernible physical neglect may warrant a finding of dangerousness. Walker v. Dancer, 386 So.2d 475
(Ala.Civ.App. 1980).
Furthermore, we find that there was clear and convincing evidence, including evidence of a recent overt act, that Thompson presents a threat of harm to others. The evidence indicates that Thompson becomes agitated and assaultive when she is not taking medication and that there is reason to believe she would not take her medication outside of the structured program at Bryce. This court has previously recognized that if a patient is no longer dangerous only because she is on medication or in a structured environment, then clearly whether she will take her medication or be in a structured environment after release should be considered prior to release. Winchester v. Bartlett, 532 So.2d 1258
(Ala.Civ.App. 1988).
In order to demonstrate an individual's dangerousness in the context of recommitment, the treating facility must point to facts and occurrences that create "more than a mere expectancy" that the individual might engage in danger-productive behavior,Lynch, 386 F. Supp. at 391, and that the individual's continued treatment and custody by the Department are necessary for her or the community's well-being. See Wyatt v. King, 781 F. Supp. 750
(M.D.Ala. 1991); Ala. Code, § 22-52-37(a)(7). The Department met that standard here.
Because we can find no error in the judgment of the probate court, that judgment is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.